No. 14811

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

CARLEE BUDKE WILLIAMS,

Plaintiff and Appellant,

-vs-

ROBERT BUDKE,

Defendant and Respondent.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable James B. Wheelis, Judge presiding.

Counsel of Record:

For Appellant:

Williams Law Firm, Missoula, Montana
Richard Ranney argued, Missoula, Montana

For Respondent:

Garlington, Lohn and Robinson, Missoula, Montana
Larry E. Riley argued, Missoula, Montana

---

Submitted: September 18, 1979

Decided: FEB 8 - 1980

Filed: FEB 8 - 1980

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Carlee Budke Williams appeals from an order denying her motion to show cause why Robert Budke should not be adjudged guilty of contempt for failure to pay child support in accordance with a marriage dissolution decree and from a modification of the dissolution decree. The order was entered by the District Court, Fourth Judicial District, Ravalli County.

Budke and Williams were formerly husband and wife. Their marriage was dissolved in May 1973. Under the dissolution decree, the wife was given custody of the parties' three minor children. Husband was to pay $50 per month in maintenance and $300 per month in child support. Husband was also to provide adequate medical and hospital insurance for the minor children and to pay their necessary dental bills.

Husband made child support payments through July 7, 1975, at which time he was $1,050 in arrears. After July 1975, the husband stopped paying child support to the Clerk of the Court although he did give cash and other personalty worth $970 directly to the minor children.

In April 1975, the husband became seriously ill. He lost 45 pounds in four months, was hospitalized in August, had open-heart surgery that same month and was rehospitalized in December. Upon the advice of his doctors, husband, an accountant, worked only two or three hours a day from August 1975 until the income tax season began in December 1975. He worked fulltime during that season before returning to his two or three hours per day schedule.

Husband's income in 1977 was $13,636. His income increased in 1978, and husband expects his income will continue to increase in the years to follow.

As of November 30, 1978, husband owed $14,872.55 in medical bills. He owns no real property, has no savings account and cannot get medical or life insurance because of his health.

-2-

Wife's maintenance payments were terminated in June 1975 when she remarried. She separated from her second husband in August 1976 and has received no financial assistance from him. Wife presently works for a flooring company where her net income is about $650 per month. Wife and the three minor children live with and receive financial assistance from the wife's mother.

At the show cause hearing, husband moved for a modification of his child support obligation. The District Court found husband financially unable to pay $300 per month child support. The District Court modified husband's future child monthly support obligations to a total of $150, until January 1, 1980, when the total increases to $225, and increases to $300 on January 1, 1981.

The District Court also found husband delinquent in accrued child support payments in the principal amount of $9,080 as of December 20, 1978. Husband was given credit for $3,600 received by the wife upon a prior execution on husband's property and $970 for payments made directly to the minor children.

In addition, the District Court established a deferred payment schedule for husband's delinquent child support obligations. Effective November 18, 1982, husband is to pay $150 per month to be credited toward the delinquent child support. Starting in October 1984, such payments are to be increased to $300 per month, and if the delinquent child support is not paid in full by February 1987, husband's monthly payments are to be increased to $500 per month. The Court also ordered that husband does not have to pay any interest on the delinquent child support.

Wife raises three issues upon this appeal:

1. Was it error to grant husband credit for $970 spent directly on behalf of the minor children?

2. Was it error not to hold the delinquent child support payable immediately and subject to enforcement by execution?

-3-

3. Was it error not to award interest on the delinquent child support?

As to the first assignment of error, we hold it was improper to grant husband credit for $970 spent directly on behalf of the minor children.

Two Montana decisions have addressed the issue of whether a parent upon whom a child support obligation rests should be granted credit for voluntary expenditures made in a manner other than that specified in the support order or dissolution decree. Haaby v. Haaby (1974), 165 Mont. 475, 529 P.2d 1387; Weber v. Weber (1978), ____ Mont. ____, 576 P.2d 1102, 35 St.Rep. 309. However, after examining the case law of this and other jurisdictions we have found the basic question addressed by the courts is whether there has been substantial compliance, in whole or in part, with the child support order. Was the spirit and purpose of the support order accomplished without violating any other provision of the dissolution decree? We believe this is the correct approach to the issue.

Under the facts before us, we find that husband has not substantially complied with the child support order. The manner in which child support is to be used is left to the discretion of the custodial parent, wife here. Young v. Williams (Alaska 1978), 583 P.2d 201, 203. By granting husband credit for the $970 spent directly on behalf of the minor children, we would be allowing husband to substitute his own judgment for that of the wife as to how child support monies are to be spent.

The second issue relates to the deferred payment schedule for husband's delinquent child support payments as ordered by the District Court.

We appreciate the effort of the District Court to take cognizance of the financial condition of husband in establishing

-4-

the deferred schedule. However, the result, as the court ordered it, is to modify the judgment previously entered in the District Court as to the accrued child support payments. This action of the District Court is oppugnant to a controlling statute. Section 40-4-208(1), MCA states:

> ". . . a decree may be modified by a court as to maintenance or support only as to installments accruing subsequent to the motion for modification."

There can be no doubt that the District Court modified the judgment for accrued child support payments, and modified it retroactively.

> ". . . 'modification' has been defined as 'A change; an alteration which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject matter intact . . .'" Webb v. Finger Contract Supply Company (Tex. 1969), 447 S.W. 906, 908.

The Webb holding foregoing related to modification by subordination of security as against a guarantor, but what the court said in Webb has pertinence here:

> ". . . It has been said that 'The power to modify anything does not imply a power to substitute a thing entirely different, and it does not defer the power to destroy'. . ." (Citing cases.) 447 S.W.2d at 908.

In Dahl v. Dahl (1978), ____ Mont. ____, 577 P.2d 1230, 1232, 35 St.Rep. 536, we pointed to the same statute (formerly section 48-330(1), R.C.M. 1947) to the effect that a divorce decree cannot be modified to cancel past due and unpaid child support.

In Porter v. Porter (1970), 155 Mont. 451, 473 P.2d 538, this Court agreed with a general rule that the power to modify decrees allowing alimony has no retrospective effect, and such power extends only to future installments and not to alimony already accrued. The Court took the same position in Kelly v. Kelly (1945), 117 Mont. 239, 157 P.2d 780.

-5-

In Scarlett v. Scarlett (Calif. 1957), 311 P.2d 188,

the California Court faced nearly the same situation as

here. The trial court had ordered the husband to pay the

accrued arrearages at the rate of $10 per month, and reduced

the child support which had been granted in the decree. The

Supreme Court reversed, saying:

> ". . . it is well established that while under
> proper circumstances the Court has the power
> to modify a decree as to payments to be made
> prospectively, but it cannot give its order of
> modification a retroactive effect so as to
> modify the amount which has theretofore accrued.
> (Citing cases.). . ." 311 P.2d at 189-190.

In Wade v. Wade (Okla. 1977), 570 P.2d 337, 339, where the

lower court has provided for installment payments of arrearages,

the Oklahoma Court said:

> "The order giving a judgment for $985.00 for delinquent
> support and providing for its payment in installments
> is likewise error. Generally there could be no
> judgment payable in installments with certain notable
> exceptions such as child support and alimony payments
> in a divorce decree. A judgment for support arrearages
> does not fall under that exception. Delinquent support
> payments must be computed and judgment entered for
> that amount. Providing the manner in which the judgment
> is to be collected amounts to an impermissible retroactive
> modification of the decree (citing cases). In addition
> such an order limits Carolyn's right to pursue statutory
> provisional remedies to collect a judgment. These remedies
> are inherent in the judgment itself." (Emphasis added;
> footnotes omitted.)

In Talbot v. Talbot (Colo. 1964), 394 P.2d 607, the Colorado

Court said:

> ". . . in Colorado each installment of child support
> maturing under a decree which has not been modified
> becomes a judgment debt similar to any other judgment
> for money and retroactive modifications thereof cannot
> be effected (citing cases). . ." 394 P.2d at 610.

The foregoing cases reflect what amounts to almost universal

law. Its rule applies in Montana under our case law and the

statute cited, section 40-4-208(1), MCA.

The wife correctly contends that the order of the District

Court deferring payments took away her right to levy execution

for the accrued payments if property could be found in the

possession of the husband which could be applied to the arrearages. Our holding here keeps in force the rights that every holder of a judgment for support in a dissolution of marriage has:

> ". . . There are various means of enforcing orders directing the payment of support money in actions for divorce. The most common are: (a) By requiring the husband to give security for the enforcement of the payments ordered (citing a statute and a case); (b) by contempt proceedings (citing cases); (c) by execution, as in the case of other money judgments (citing the authority) and (d) by invoking the police power of the state to punish the parent for wilfully failing, refusing or neglecting to support his child (citing authority)." State v. District Court (1948), 122 Mont. 61, 72, 198 P.2d 761, 767.

Moreover, our holding here does not mean that a District Court is entirely without power to arrange a deferred schedule for arrearages and support payments. In this case, the husband was brought before the District Court on a motion that he be held in contempt for failing to make the back payments. The Court determined that he was without the resources to make the back payments and therefore was not guilty of contempt. State v. District Court of Third Judicial Dist. (1938), 107 Mont. 185, 81 P.2d 692. The Court also determined in this case that the husband would in the future be able to make payments on those arrearages beginning on November 18, 1982. The District Court always has jurisdiction in contempt proceedings for the purpose of enforcing a support money decree, to find the defaulting party in contempt, and to stay the execution of punishment for the contempt upon the proviso that the defaulting party purge himself by making payments in accordance with a schedule established by the District Court. We so stated in State v. District Court, supra, 122 Mont. at 74, 75, 198 P.2d at 768.

However, the deferral schedule adopted by the District Court here, without reference to contempt, constituted a modification of a judgment for accrued payments. This cannot be done.

The remaining issue raised by the wife is that the District Court was incorrect in providing that the deferred payments on the accrued amounts due her under the judgment should not bear interest.

The statute respecting interest on judgments that was in effect at the time of the original decree (May 18, 1973) but not on the date of the modification of the decree (March 2, 1979), was section 47-128, R.C.M. 1947. That statute provided:

". . . Interest is payable on judgments recovered in the courts of this State at the rate of six per cent per annum, and no greater rate, but such interest must not be compounded in any manner or form."

Section 47-128, was amended in 1979, and recodified as section 25-9-205, MCA, and now provides in pertinent part:

". . . interest is payable on judgments recovered in the courts of this state at the rate of 10% per annum and no greater rate. Such interest must not be compounded in any manner or form."

Husband does not agree that the foregoing statutory provisions apply to decrees for maintenance and support monies payable in installments in marital dissolution cases. Instead, he contends that section 25-9-204, MCA, is controlling:

"The clerk must include in the judgment entered up by him any interest on the verdict or decision of the court, from the time it was rendered or made."

Husband contends that the first of the above quoted statutes only states the rate of interest to be charged when the Court imposes interest, and the clerk may only charge interest under section 25-9-204, MCA, in the absence of specific directives from the Court.

The contention is novel. If we were to agree, it would jeopardize the right of any judgment creditor to collect interest on his judgment, in every case where a money judgment is obtained, and not only in marital dissolution actions. However, the rule contended for by the husband is not the true rule. While

-8-

Montana has never held directly in a divorce action that interest is collectible on an overdue support or money payment, we said so indirectly with respect to a property settlement payment that was overdue in Rodgers v. Rodgers (1976), 169 Mont. 403, 548 P.2d 141.

In Howard v. Howard (Cal.App. 1956), 298 P.2d 48, it was held that where the judgment was silent as to interest, the allowance of interest on a money judgment for an attorney fee was automatically established by law. In Harden v. Harden (Okla. 1942), 130 P.2d 311, it was held that a judgment for alimony is as much a "debt" as any other judgment for money, and without a specific provision for interest in the judgment, a past due installment draws interest at the legal rate.

We hold therefore that when the marital dissolution decree is silent as to interest, such interest is automatically collectible by the judgment creditor spouse on past due payments for support money or maintenance, the same as any other money judgment under section 25-9-205, MCA.

This is not to say that the Court may not, in its original decree, provide that interest shall not be payable as to a part of its award. Circumstances may exist when it would be inequitable to award interest, particularly in cases involving property settlement agreements, where the property division to one of the spouses requires installment payments. Thus, as appellant points out, in In Re Marriage of Brown (1978), ___ Mont. ____, 587 P.2d 361, 35 St.Rep. 1733, we suggested to the District Court, in remanding a decision to the District Court, that the wife's payments could be made in installments without interest. Such a provision may often be necessary where the spouse having to make the payments under the dissolution decree is possessed of nonliquid assets, and the reason for the installment payments

-9-

arises from the character of the property, rather than the availability of monies. See for example, Griffin and Griffin (Ore.App. 1978), 579 P.2d 885; Martin v. Martin (Okla. 1960), 350 P.2d 270. We point out however, that in the State of Washington it was held in Ovens v. Ovens (1962), 376 P.2d 839, where in lieu of $6,500 property award in a divorce action a divorced wife received a lien in such sum on the husband's realty, it was held to be an abuse of discretion to allow husband to have the use of the wife's award without interest, in the absence of a sound reason stated by the trial court.

A further reason exists for upholding the right of the wife to receive interest on the past due installments in this case. Since the original decree was silent as to interest, she is entitled to receive interest on the past due installments. The action of the District Court providing for no interest in a subsequent order is in effect a modification of the first judgment, which again is impermissible under section 40-4-208(1), MCA.

The wife does not appeal from the modification by the District Court of the prospective payments for child support. On that point, the District Court order is correct.

The cause is reversed and remanded with instructions to the District Court to redetermine the past due amounts owing to the wife under this Opinion and for such other orders as are necessary to bring its decision of March 2, 1979 into conformance with this Opinion. Costs to wife. We leave it to the District Court to determine whether further attorney fees should be awarded to the wife.

_____
                    Justice

-10-

We Concur:

_Frank I. Haswell_
Chief Justice

_Gene B. Daly_

_John Conway Harrison_

_Daniel J. Shea_
Justices