No. 85-333

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

IN RE THE MARRIAGE OF
DIETA M. COOK,

      Petitioner and Appellant,

  and

JAMES D. COOK,

      Respondent and Respondent.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Tipp, Hoven, Skjelset & Frizzell; Richard R. Buley,
Missoula, Montana

    For Respondent:

        Mark S. Connell, Missoula, Montana

    For Minor Children:

        J. Howard Toole, Missoula, Montana

---

Submitted on Briefs: May 9, 1986

Decided: September 23, 1986

Filed:    SEP 23 1986

_____
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant, Dieta Cook, appeals the order of the Missoula County District Court modifying its earlier custody and support decree transferring custody to James and ending his support obligation.

We affirm.

Dieta raises the following issues on appeal:

1. Whether the District Court properly invoked jurisdiction in this matter?

2. Whether the District Court's findings regarding serious endangerment are supported by substantial credible evidence?

3. Whether the District Court's findings regarding child support are supported by the record?

The parties were divorced by decree of dissolution on January 10, 1980. Dieta was awarded custody of the parties' two minor children, Tom and Martin (Mardy). James was granted visitation rights and ordered to pay $250.00 per month per child for support. The decree ordered that Dieta not change the children's residence from Montana without first obtaining the permission of the court.

In May of 1980, Dieta removed the children to Utah without obtaining the court's permission. Several additional court proceedings took place in the case over the next few years regarding visitation and financial requirements set forth in the decree. The children visited James during the summers of 1980, 1981, 1982 and 1983.

Beginning in the summer of 1981, the children requested they be allowed to remain with their father on a permanent

basis. On July 11, 1983, James filed a motion for change of custody. An order to show cause was issued on July 13, 1983, setting hearing upon the motion for August 12, 1983. The hearing was vacated.

The children remained with James pending a new hearing date. Before a hearing could be held, Dieta appeared in Missoula on December 15, 1983, and attempted to surreptitiously remove the children. She failed, and on December 16, 1983, James obtained an order restraining Dieta from removing the children from Missoula. Before the order was served upon Dieta, she unsuccessfully attempted to remove Tom from school, and successfully abducted Mardy by telling him she would drive him to school. Later that day, Dieta telephoned a Missoula County Deputy Attorney and was told of the court's order restraining her from removing the children from Missoula. Dieta took Mardy to Utah, and then to Austria for several weeks.

On January 30, 1984, the district judge issued an order granting James temporary custody of both children, and ordering Dieta to produce Mardy for a hearing before the court on February 27, 1984. A second such order was issued on February 15, 1984. At the hearing, the court reaffirmed its earlier order awarding temporary custody of the children to James, but allowed Mardy to remain in Utah until the court was able to more fully consider the merits of the case at a subsequent hearing. The court also appointed an attorney to represent the children, ordered Dieta to allow James to visit Mardy by telephone, and set further hearing for April 14, 1984. Due to the court's full docket, the case was not heard until June 5, 1984, and January 2, 3, 4, 7 and 10, 1985.

On March 29, 1984, a hearing was held in Utah by the Sevier County District Court on a custody motion filed by Dieta. That court concluded that the Montana court had continuing jurisdiction over the controversy; that the Montana court was the more convenient forum to litigate the issue; and that the Utah court was the less convenient forum. The Utah court declined to accept jurisdiction of the case.

On January 23, 1985, following the six-day custody hearing in Missoula, Judge Henson issued a judgment in which he found that the Missoula court properly had jurisdiction to hear the case, and granted James' motion for change in custody.

On March 5, 1985, the court held a hearing concerning the child support owed to Dieta by James. The court concluded that, based upon an oral agreement between the parties, Dieta was estopped from enforcing the support provisions as contained in the decree. She was limited to the amount of support orally agreed to by the parties from June of 1980, until July of 1983. From July of 1983, James had physical custody of one or both children and was paying all expenses associated with the support of the child or children in his custody. Therefore, James was relieved of his obligation to pay child support after July of 1983.

Dieta appeals the orders of the District Court concerning jurisdiction, custody, and support.

The first issue raised by Dieta is whether the District Court properly exercised jurisdiction in this case. Dieta argues that the Montana court should have declined jurisdiction because the Utah court was the children's home state and the more convenient forum. We do not agree.

Section 40-4-211, MCA, lists four distinct grounds for the exercise of jurisdiction by a Montana court. In this case, two of the grounds apply. That section states:

(1) A court of this state competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

. . .

(b) it is in the best interest of the child that a court of this state assume jurisdiction because:

(i) the child and his parents or the child and at least one contestant have a significant connection with this state; and

(ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

. . .

(d)(i) no other state has jurisdiction under prerequisites substantially in accordance with subsections (1)(a), (1)(b), or (1)(c) of this section or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine custody of the child; and

(ii) it is in his best interest that the court assume jurisdiction.

The Montana court properly exercised jurisdiction under § 40-4-211(1)(b), MCA. James and the children had a "significant connection" with Montana, and there was "substantial evidence" available locally which was relevant to the custody issue. Both the parties and the children lived in Montana for many years. The Montana court dissolved the marriage, awarded custody to Dieta, and handled several post-decree motions. Further, James and the children resided in Missoula at the time the motion to modify custody was made. Both children had numerous friends, relatives and teachers in the Missoula area able to testify. Three local psychologists tested the parties and the children and

- 5 -

testified at the hearing. In addition, a local attorney was appointed to represent the children. The District Court properly concluded that it was in the best interests of the children that the Montana court exercise jurisdiction over this custody dispute.

Jurisdiction was properly invoked under § 40-4-211(1)(d), MCA, as well. On March 29, 1984, the Utah court declined to accept jurisdiction in this matter deferring to the Montana court which it expressly found to be the more convenient forum. Thus, the Montana court had jurisdiction under § 40-4-211(1)(d), MCA.

Dieta's argument that the District Court should have declined jurisdiction because the Utah court was the more convenient forum is not persuasive. According to § 40-7-108, MCA:

> (1) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum. (Emphasis added.)

The decision to decline jurisdiction on inconvenient forum grounds is purely discretionary with the District Court. The District Court did not abuse that discretion in accepting jurisdiction. Therefore, we hold that the District Court had jurisdiction to hear this case.

Dieta's second issue is whether the District Court's findings regarding serious endangerment are supported by substantial credible evidence. We hold that the District Court's order is supported by substantial credible evidence. In a detailed and thorough opinion, the District Court concluded that a change occurred in the children's

- 6 -

circumstances making a change of custody necessary to serve the best interests of the children. Tom was 14 years old at the time of the hearing and desired the modification; the present environment of the children endangered seriously their mental and emotional health; and the harm likely to be caused by a change of environment was outweighed by its advantages to them.

The District Court's conclusions are supported by six pages of findings. The children requested they be allowed to remain with Tom. Dieta removed Mardy to Utah despite her knowledge of a court order restraining her from doing so. The relationship among the children, their father, and stepmother is extremely close and loving. Dieta impaired, frustrated, and attempted to stifle the children's relationship with their father, and interfered with the children's communication with each other while they were separated. She monitored and tape-recorded telephone calls to and from Tom, Mardy and James, delayed or intercepted letters and photographs sent through the mail, and discouraged the children's desire to spend time with James. She threatened to sell the children's toys and move to another country and never see them again should custody be changed at their request.

In a custody modification appeal, this Court will not disturb a District Court's findings where they are supported by substantial credible evidence unless there is a clear preponderance of evidence against those findings. Reinoehl v. Perry (Mont. 1984), 691 P.2d 1384, 41 St.Rep. 2269. In re Marriage of Bolton (Mont. 1984), 690 P.2d 401, 41 St.Rep. 1698. The District Court's decision to modify custody is

clearly supported by substantial credible evidence and we will not disturb that decision on appeal.

Dieta's final issue is whether the District Court's findings regarding child support are supported by the record. We hold that they are.

The parties were divorced on January 10, 1980. James was ordered to pay $250.00 per month per child in support. The decree declared that the amount was set "in recognition of the mutual desire of the parties to have the children pursue a parochial education." In May of 1980, Dieta moved with the children to Utah in violation of the decree. James learned that the children were no longer attending parochial school. In June of 1980, the parties orally agreed to reduce support to $200.000 per month per child for the months of August through June, and $100.00 for July. The agreement was reduced to writing, but James did not sign it because he feared that would indicate his approval of Dieta's move to Utah. The agreement also provided for a modified visitation schedule. From and after June of 1980, the parties acted in reliance upon their oral agreement.

In July of 1983, James filed his motion to modify custody. From that date on either one or both of the children were in his custody and James discontinued payment of child support. The modification of custody was granted on January 23, 1985. On February 14, 1985, James filed a motion to determine the nature and extent, if any, of his support obligation. On March 14, 1985, the District Court entered its order and judgment.

The court found that James and Dieta entered into a binding agreement modifying support and visitation which both parties adhered to. James relied upon the agreement to his

detriment in various financial dealings. The court held that his motion for modification of custody "was essentially a motion to eliminate the requirement that Respondent pay child support to Petitioner," and James no longer owed support after that date.

The court concluded that Dieta was estopped from enforcing the support provisions of the decree from and after June of 1980, the date the parties entered into their agreement. Further, the changes in the children's residences represented changed circumstances so substantial and continuing as to make enforcement of James' original and modified support obligation unconscionable. We agree.

The general rule is that when child support becomes due under a dissolution decree it becomes a judgment debt similar to any other judgment for money. Section 40-4-208, MCA; In re Marriage of Carlson (Mont. 1984), 693 P.2d 496, 41 St.Rep. 2419; Williams v. Budke (1980), 186 Mont. 71, 606 P.2d 515. However, a number of courts have recognized that under a compulsion of circumstances the mother may not collect the amount that has accrued in a judgment for support, where the husband has made expenditures which constitute substantial compliance with the spirit and intent of the decree. Headley v. Headley (Ala. 1964), 172 So.2d 29; Steckler v. Steckler (Mo. 1956), 293 S.W.2d 129; Chapman v. Chapman (Or. 1945), 161 P.2d 917; Mason v. Mason (Or. 1934), 34 P.2d 328. The courts are generally reluctant to state any general rule as to when an estoppel arises, but generally the equitable principle arises when the mother has expressly or impliedly consented to an arrangement other than the payment of the judgment. State of Washington ex rel. Blakeslee v. Horton (No. 85-639, Decided July 24, 1986), 43 St.Rep. 1321;

Headley v. Headley, 172 So.2d at 33. It is clear that in applying the doctrine of equitable estoppel the courts are guided by the principle that while the judgment for support may be in another's name, the real beneficiaries of the judgment are the children, not the person named in the judgment. M ___ v. M____ (Mo. 1958), 313 S.W.2d 209, 213. With that in mind, we look to the facts of this case. First, Dieta expressly consented to the payment of the judgment in a manner different than that set out in the decree. Second, James made the payments as required by the agreement, thus he acted within the spirit and intent of the decree. Finally, we note that James has had the children since 1983 and that to require payment of support now would harm the children by taking money away from them rather than benefiting them. Thus, we agree with the District Court that Dieta is estopped from enforcing the support provisions of the decree from the date the parties entered their agreement. The provision of § 40-4-208, MCA, providing that a decree may be modifified by a court as to maintenance or support only as to installments accruing subsequent to the motion for modification, is subject to the doctrine of equitable estoppel under the facts of this case. Only in cases where equitable estoppel is found by the trial court upon clear and compelling evidence may this doctrine override the provisions of § 40-4-208, MCA.

In addition, once James made his motion in July of 1983, § 40-4-208, MCA, gave the court discretion to modify his support obligation, subsequent to that date. One or both of the children resided with him after that date and James paid all the expenses associated with the support of the child or children in his custody. The District Court did not abuse its discretion in determining James' support obligation.

- 10 -

Therefore, we affirm the District Court in all respects.

_____
Justice

We Concur:

_____
Chief Justice


_____


_____
Justices

- 11 -

Mr. Justice Fred J. Weber dissents as follows:

The majority opinion carefully reviewed the evidence considered by the District Court in reaching its conclusion that Dieta Cook was estopped from enforcing the support provisions of the decree of dissolution. I agree that the evidence supporting estoppel is compelling and would agree with the conclusion of the court if the sufficiency of the estoppel evidence were the only question before us. However, I find other aspects have not been sufficiently considered in the majority opinion.

The majority opinion effectively has disregarded the provision of § 40-4-208, MCA, which in pertinent part states:

> (1). . . a decree may be modified by a court as to maintenance or support only as to installments accruing subsequent to the motion for modification.

The above section is a part of the Uniform Marriage and Divorce Act enacted by our legislature in 1975. Uniformity of the Act among the several states was a primary objective as stated at § 40-4-102, MCA:

> This chapter shall be so applied and construed as to effectuate its general purpose to make uniform the law. . . among those states which enact it.

The essence of § 40-4-208, MCA, is that a court may modify a support decree only as to subsequently accruing installments. On its face the statute appears to prohibit the action which is being taken in the present case.

It might be argued that the decree in the present case does not actually constitute a modification. I believe that has been disposed of in cases interpreting the section.

Williams v. Budke (1980), 186 Mont. 71, 606 P.2d 515, was a marriage dissolution case in which the decree required

12

the husband to pay $300 per month in child support. The husband became seriously ill, had open heart surgery and was rehospitalized. As of 1978 husband owed $14,872.55 in medical bills and had no real property, no savings account and could not get medical or life insurance. Wife worked for a flooring company and she and her three minor children lived with her mother. At the show cause hearing the husband moved for a modification of his child support obligation and the District Court found him unable financially to pay $300 per month. As to future installments, the award was reduced to a total of $150, with subsequent increases in later years. The District Court found the husband delinquent in accrued child support payments in the amount of $9,080 and gave the husband credit for $3,600 received by the wife upon a prior execution and $970 for payments made directly to the minor children. The District Court then established a deferred payment schedule for the husband's delinquent support obligation providing that the husband was to pay $150 per month to be credited toward delinquent child support with the commencement delayed for several years. This Court reversed the action of the District Court in deferring the payment for delinquent child support. This Court acknowledged the effort of the District Court to consider the financial condition of the husband and stated:

> We appreciate the effort of the District Court to take cognizance of the financial condition of husband in establishing the deferred schedule. However, the result, as the court ordered it, is to modify the judgment . . . as to the accrued child support payments. This action of the District Court is oppugnant to a controlling statute [citing the above § 40-4-208(1)] . . .

> There can be no doubt that the District Court modified the judgment for accrued child support payments, and modified it retroactively . . .

13

In *Dahl v. Dahl* (1978), Mont., 577 P.2d 1230, 1232, 35 St.Rep. 536, we pointed to the same statute (formerly Section 48-330(1), R.C.M. 1947) to the effect that a divorce decree cannot be modified to cancel past due and unpaid child support. (Emphasis supplied.)

*Williams*, 606 P.2d at 517.

Notwithstanding the arguments which were made to the court regarding the extreme health problems on the part of the husband and his financial inability to pay, this Court concluded that the statute was controlling so that the judgment for accrued child support payments could not be modified retroactively. This Court also reaffirmed the *Dahl* rule which held that a divorce decree cannot be modified to cancel past due and unpaid child support. The effect of the majority opinion in the present case is a cancellation of past due and unpaid child support in direct contradiction to the holdings in *Dahl* and *Williams*.

In a similar manner, in State Department of Revenue v. Dawson (Mont. 1984), 674 P.2d 1091, 41 St.Rep. 46, this Court considered the action of the District Court which had concluded that the defendant was in arrears in the amount of $6,689 and that the defendant was unable to make the support payments and therefore concluded that it was appropriate to restrain the State of Montana from levying upon the bank account of the defendant. While the lower court had not in fact modified the decree, it effectively neutralized it by prohibiting the levy of a writ of execution. This Court again affirmed and explained its position in *Williams* and stated:

The principle that child support installments past due and unpaid are not subject to modification is an old one in Montana law, having been articulated as early as *Kelly v. Kelly* (1945), 117 Mont. 239, 157 P.2d 780. However, it was our decision in

14

> Williams v. Budke (Mont. 1980), 606 P.2d 515, 37
> St.Rep. 228, that adopted the view that restric-
> tions on the right to levy for accrued child sup-
> port is an _impermissible retroactive modification_.
> (Emphasis supplied.)

Dawson, 674 P.2d at 1093.

In response to the argument that the ruling was not in fact a modification, the court stated:

> However, the practical effect of the order was to
> defer appellant's right to levy execution on ac-
> crued child support payments. This constituted a
> retroactive modification and was erroneous.

Dawson, 674 P.2d at 1093.

In addition, this Court reaffirmed its previously stated position in Williams and again stated:

> Moreover, in Dahl v. Dahl . . . we pointed to
> Section 40-4-208(1), MCA, to the effect that a
> _divorce decree cannot be modified to cancel past
> due and unpaid child support_. (Emphasis supplied.)

Dawson, 674 P.2d at 1093.

In these two cases, we find the strong position of this Court that a divorce decree cannot be modified to cancel unpaid and past due child support and that to even place a restriction on the right to levy for such accrued support is impermissible modification. The present case does not address the clear position of these cases and a number of others which have reinforced the statutory provision that a modification may be made of a support order only as to future rather than past due installments.

In State of Washington ex rel., Blakeslee v. Horton (Mont. 1986),____ P.2d ____, 43 St.Rep. 1321, we for the first time applied equitable principles to bar collection of past due and unpaid child support installments. That was a distinctive case in which the course of conduct on the part of both mother and father had extended over a period of

15

fourteen years. Perhaps we can say that the unique circumstances in such a case justify the equitable position taken. I have a real problem in attempting to apply the same rationale to the present case. The legislative view of the power of the district court and this Court is contained in § 40-4-208, MCA, where the legislature states that a court may modify a decree as to support only as to installments accruing subsequent to the motion. In the present case the majority has responded to an equitable argument which should be directed to the legislature. Certainly it may be reasonable to suggest to the legislature that courts should be given authority to modify support provisions on equitable theories such as involved in the present case. However, I believe we have gone beyond the function of this Court in making the legislative modification ourselves.

In further support of the contention that child support decrees cannot be modified as to installments accruing subsequent to the motion for modification are the Commissioners' Notes to what has been adopted in Montana as § 40-4-208, MCA:

> Subsection (a) makes each installment under an order for periodic support or maintenance final and non-modifiable when it falls due. The accrued installments cannot be modified retroactively, and future installments can be modified only as to those falling due after a motion for modification has been filed. The purpose of thus making each installment final and non-modifiable when it becomes due is to give each past due installment the status of a final judgment entitled to full faith and credit in other states pursuant to the decisions of the Supreme Court in Lynde v. Lynde, 21 S.Ct. 555, 181 U.S. 183, 45 L.Ed. 810 (1901); Sistare v. Sistare, 30 S.Ct. 682, 218 U.S. 1, 54 L.Ed. 905, 28 LRANS 1068, 20 Ann.Cas. 261 (1910); Barber v. Barber, 65 S.Ct. 137, 323 U.S. 77, 89 L.Ed. 82, 157 A.L.R. 168 (1944); and Griffin v. Griffin, 66 S.Ct. 556, 327 U.S. 220, 90 L.Ed. 635 (1945).

16

Uniform Marriage and Divorce Act Commissioner's Notes, § 316.

The Commissioners' Notes provide a simple statement of the law. Many state courts have followed this statement of the law and have steadfastly refused to consider retroactive child support modification. See Ferry v. Ferry (Neb. 1978), 271 N.W.2d 450; Jahn v. Jahn (Ind. 1979), 385 N.E.2d 488; Gomez v. Gomez (N.M. 1978), 587 P.2d 963; Worthley v. Worthley (Cal. 1955), 283 P.2d 19; Gamble v. Gamble (D.C. 1969), 258 A.2d 261; Robertson v. Cason (La. 1967), 203 So.2d 743; Hatch v. Hatch (Ariz. 1976), 547 P.2d 1044; McAdams v. Scullin (Ill. 1977), 368 N.E.2d 1036; In re Hart's Marriage (Colo. 1975), 533 P.2d 42. Oregon allowed a modification, but did so under a different statute. See Emanuel v. Emanuel (Or. 1978), 5 F.L.R. 2156.

I would reverse the District Court and remand for a determination of the support accruing subsequent to the filing of the motion, for which an award can be made as prospective rather than past due.

_____
Justice

Mr. Justice L. C. Gulbrandson:

I join in the foregoing dissent of Mr. Justice Weber.

_____
Justice

Mr. Chief Justice J.A. Turnage:

I join in the foregoing dissent of Mr. Justice Weber.

_____
Chief