No. 86-168

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

IN RE THE MARRIAGE OF
STEPHANIE H. SABO,

        Petitioner and Respondent,

   and

THOMAS I. SABO,

        Respondent and Appellant.

_____

APPEAL FROM:  District Court of the Second Judicial District,
             In and for the County of Silver Bow,
             The Honorable Arnold Olsen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Henningsen & Purcell; Mark A. Vucurovich, Butte,
        Montana

    For Respondent:

        J. David Penwell, Bozeman, Montana

_____

                  Submitted on Briefs: Aug. 14, 1986

                  Decided: December 11, 1986

Filed:   DEC 11 1986

_____
               Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Thomas Sabo appeals from a December 31, 1985, judgment of the Second Judicial District Court, Silver Bow County. The judgment ordered Thomas to pay Stephanie $7,750 in past child support, pay her $3,904.85 from the sale of marital property, and pay her $2,201.23 in attorney fees plus 10 percent accruing interest.

We reverse in part and affirm in part.

Thomas Sabo raises two issues for our review:

1. Is a non-custodial father, who assumes permanent custody and support of the children with the consent of the custodial mother, relieved of the obligation to pay child support accruing after and during the consensual assumption of custody?

2. Did substantial evidence support the court's finding that Stephanie was a partner with Thomas in SACO Investments?

After sixteen years of marriage, the Sabos were divorced on November 15, 1976, in Silver Bow County. At the time, Thomas was an attorney and Stephanie was a real estate agent. The divorce decree incorporated a settlement agreement in which Thomas agreed to pay Stephanie $125 per month per child, in support for their three minor children. Thomas' support obligation for his son, Mark, ended in September 1979, when Mark turned eighteen.

Through February 1981, Thomas paid Stephanie $8,375 in child support. In March 1981, Stephanie filed a Uniform Reciprocal Enforcement of Support Act (URESA) claim against Thomas while she was living in Texas. Thomas paid $1,000 on the claim but paid no child support after that date.

In the summer of 1981, both the youngest daughter, Erin, and the youngest son, Matthew, began living permanently with Thomas in Bozeman. Thomas never brought any action to modify the children's support payments to reflect the change in circumstances. While the children lived with Thomas, Stephanie had weekly dinners with them but made no claim for child support. Matthew turned eighteen in April 1982. Stephanie brought the present action on January 25, 1985, less than one month before Erin turned eighteen.

## Issue No. 1

Is a non-custodial father, who assumes permanent custody and support of the children with the consent of the custodial mother, relieved of the obligation to pay child support accruing after and during the consensual assumption of custody?

Generally, when child support becomes due under a dissolution decree, the support becomes a judgment debt similar to any other judgment for money. Section 40-4-208, MCA. In Re Marriage of Carlson (Mont. 1984), 693 P.2d 496, 499, 41 St.Rep. 2419. Under this statute, the court may modify a child support award, but only upon a showing of changed circumstances or written consent of the parties. The statute allows only prospective, not retroactive, modification of child support. Section 40-4-208(1), MCA, provides: "[A] decree may be modified by a court as to maintenance or support only as to installments accruing subsequent to the motion for modification." Previously, we held that the statute barred modification of child support in arrears. "A divorce decree cannot be modified to cancel past due and unpaid child support." Dahl v. Dahl (1978), 176 Mont. 307, 310, 577 P.2d 1230, 1232. Following the equitable principles expressed in three recent cases, we overrule Dahl and its progeny.

In State of Washington ex rel. Blakeslee v. Horton (Mont. 1986), 722 P.2d 1148, 43 St.Rep. 1321, we applied equitable principles to bar collection of past due and unpaid child support installments. Blakeslee noted the totality of the circumstances surrounding the parents' relationship with the children, and the oral support agreement which had governed their relationship for fourteen years. Citing the Blakeslee district court, we stated:

> The law is clear that the arrearage in child support payment cannot be modified by the court upon any retroactive basis. . . These legal principles, however valid they may be as a general rule, are rendered impotent when the parties mutually agree that they be ignored and also carry out such agreement in actual fact. . . Equity cannot allow the mother to participate in nullification of the purpose of the law in fact and, at the same time, allow her to claim the benefit of it in theory, simply because there is a meter running which can total a dollar loss in child support. [Emphasis added.]

Blakeslee, 722 P.2d at 1050-1051.

Thomas Sabo accepted the children into his home and raised the children without any support from Stephanie, even though she was employed as a real estate agent after her return to Bozeman. Stephanie never asserted that her current request was founded upon any actual need of her children. Furthermore, she never suggested any implied need which had not been satisfied over the years, or which had now arisen and could possibly serve to validate her action at this belated point. See Blakeslee, 722 P.2d at 1151.

Although Thomas took no action to change the terms of the divorce decree, he accepted sole responsibility for the children's health, welfare and support. During the period of Thomas' care, Stephanie's major contribution was sharing her Mexican vacation with Erin. Such inequity cannot validate

4

her claim. "Although legally the mother may have been correct in her claim for child support, equity demands that the claim must fail. This Court has long adhered to such principles of equity." Blakeslee, 722 P.2d at 1151.

The Sabo children voluntarily moved in with Thomas. During the entire period the children lived with Thomas, Stephanie neither pursued support payments in arrears nor objected to the shift in custody. By her assent and conduct, Stephanie consented to the arrangement. As we recently held, "[T]he equitable principle arises when the mother has expressly or impliedly consented to an arrangement other than the payment of the judgment." In Re Marriage of Cook (Mont. 1986), 725 P.2d 562, 566, 43 St.Rep. 1732, 1737. This principle acknowledges that the real beneficiaries of the judgment are the children, not the person named in the judgment. In Cook, the mother was awarded custody and child support for the children. A few years after the divorce, the children began living permanently with the father. Upon his petition, the father was granted custody of the children several years later.

On the issue of child support in arrears, we agreed with the Cook district court that the parents had entered into a binding oral agreement modifying support and visitation. The father relied on the agreement to his financial detriment. We concluded that the mother was estopped from enforcing the support provisions of the decree after the date they entered into the oral agreement. "Furthermore, the changes in the children's residences represented changed circumstances so substantial and continuing as to make enforcement of [the father's] original and modified support obligation unconscionable." Cook, 725 P.2d at 566.

5

Never, during the entire period that the Sabo children were being raised by Thomas, did Stephanie offer any financial assistance to Thomas. In Cook, we noted that circumstances may not allow the mother to collect child support in arrears, "where the husband has made expenditures which constitute substantial compliance with the spirit and intent of the decree." Cook, 725 P.2d at 566. Thomas has met both the spirit and the purpose of child support obligations. Thomas did not abrogate his duties and obligations under the decree of dissolution. On the contrary, he assumed the duties of the custodial parent by default, after Stephanie relinquished them.

Stephanie consented to the change in custody and support. The question now becomes whether consensual modification of child support is enforceable in Montana and the extent of any such enforcement.

Upon compelling evidence, the doctrine of equitable estoppel may override the provisions of § 40-4-208, MCA. This principle was best articulated in In Re the Marriage of Jensen (Mont. 1986), ___ P.2d. ___, ___, 43 St.Rep. 1891, 1984-1895.

> We therefore hold that in Montana a decree for support may be modified on equitable grounds by a court where there is clear and compelling evidence of the terms of an oral agreement or modification. We further hold such modification may be applied only to maintenance and support payments to be made subsequent to the oral agreement for modification.

These conclusions "are consistent with both Blakeslee and Cook where we enforced oral agreements pertaining to installments of support subsequently accruing." Jensen, 43 St.Rep. at 1894.

Under the equitable principles of Blakeslee, Cook and Jensen, we hold that Thomas substantially complied with the

6

decree obligations. By her assent and conduct, Stephanie consented to the shift in custody and support. We cannot equitably allow Stephanie to reap a windfall of support payments, if she never made the support expenditures. "A party to an agreement which has been performed for some length of time is estopped to deny its validity." Jensen, 43 St.Rep. at 1895. Thomas is therefore relived of the obligation to pay any child support accruing after and during his consensual assumption of custody.

On Issue No. 1, we reverse.


Issue No. 2

Did substantial evidence support the court's finding that Stephanie was a partner with Thomas in SACO Investments?

Thomas engaged in business activities with a realtor, Gene Cook, in SACO Investments. SACO's primary purpose was investment in real estate. During the marriage, SACO bought some parcels known as the Hoff Property. In the settlement agreement, Thomas' share of the parcels was identified as the jointly-held property of Thomas and Stephanie.

After the divorce, SACO sold the one remaining parcel of the Hoff Property for $14,000. However, Thomas did not tell Stephanie about the sale or give her any money from the sale. Stephanie later learned of the sale from Cook. Thomas contended that Stephanie was not a SACO partner and, therefore, not entitled to any proceeds. However, the District Court found that she was a partner and entitled to one-half of Thomas's share. Therefore, the court awarded her one-fourth of the total proceeds plus interest, or $3,904.85.

The court's finding was well supported. Various SACO deeds identify Stephanie as a partner. The deeds were

prepared by Thomas as attorney for the partnership. Furthermore, in his original response to Stephanie's divorce filing, Thomas signed a sworn statement that the only assets he held, personally and apart from the marital estate, were his car and law practice. In addition, Thomas signed the property settlement agreement, listing SACO properties as "jointly held properties."

These documents, signed by Thomas, are substantial evidence that Stephanie was entitled to participate in the partnership property. We will not set aside the findings of the District Court unless there is a clear abuse of discretion. In Re the Marriage of Perry (Mont. 1985), 704 P.2d 41, 43, 42 St.Rep. 1101, 1104. No such abuse existed in this case.

On Issue No. 2, we affirm.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices

8