No. 94-587

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF

THOMAS R. GLANVILLE,

      Petitioner and Appellant,

  and

PATRICIA DIANE GLANVILLE,

      Respondent and Respondent.

FILED

JUL 06 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted o. Lympus, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

            Paula Johnson, Attorney at Law
            Whitefish, Montana


      For Respondent:

            H. James Oleson; Oleson Law Firm,
            Kalispell, Montana


Submitted on Briefs: March 30, 1995

Decided: July 6, 1995

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court

Thomas R. Glanville appeals from an order of the District Court for the Eleventh Judicial District, Flathead County, modifying child custody and support. We affirm.

The issue is whether the District Court erred in requiring Thomas R. Glanville to pay back child support from July 1991 through August 1992.

The marriage of Thomas R. Glanville (the father) and Patricia Diane Glanville (the mother) was dissolved in April 1988 in San Luis Obispo County, Superior Court of California. They agreed to joint legal custody of their two school-age children. Under a modified order entered in November 1990 (apparently after the father moved to Montana), the mother would have physical custody of the children until June of 1991. The father would then assume physical custody until the summer of 1992, when the court would review the matter. Under the modified decree, the father was to pay the mother child support of $400 per month.

In June of 1991, the children came to Whitefish, Montana, to live with their father. The planned review by the California court in the summer of 1992 did not occur. Instead, at the children's request, they remained in Whitefish with their father except for Christmas holiday and summer visitation with their mother.

In November 1992, the father filed in the Eleventh Judicial District Court, Flathead County, an affidavit and petition for modification of custody, visitation, and support. He asked the

court to grant him primary residential custody of the children, subject to reasonable visitation with the mother. He also asked that the mother be ordered to pay him child support retroactive to January 1992.

A hearing was held before a special master on June 10, 1993. Adopting the special master's recommendations in their entirety, the court accepted jurisdiction and modified the order of the California court to provide that the children shall reside with their father and have reasonable visitation with their mother. It ordered the mother to pay child support of $150 per child per month retroactive to August 1992. The court ruled that the father's obligation to pay child support under the California decree continued until August 1992. The father had paid no child support to the mother since October of 1990. Calculating the resulting support liability of each party, the court ordered the father to pay the mother $4,820.38 in back child support.

Did the District Court err in requiring the father to pay back child support from July 1991 through August 1992?

The father argues that he should not be required to pay the mother child support for time during which the children lived with him. Rather, he argues that he is entitled to child support payments from the mother for that period. His view as to the effective date for this has varied. On appeal, he contends the mother should be required to pay him child support from July 1991 forward. As stated above, his petition for modification asked that

3

she be required to pay child support retroactive to January 1992. At the hearing, he testified that she should be required to pay support retroactive to May 1992

Section 40-4-208(1), MCA, provides:

Except as otherwise provided in 40-4-201(6), MCA, [concerning the terms of a separation agreement] a decree may be modified by a court as to maintenance or support only as to installments accruing subsequent to actual notice to the parties of the motion for modification.

Under the above statute, the earliest date to which the District Court could have retroactively modified the California decree would be November 1992, when the father filed his motion for modification. The father argues, however, that the mother is equitably estopped from seeking back child support from him.

A series of Montana cases has established that, upon compelling evidence, the doctrine of equitable estoppel may override the provisions of § 40-4-208, MCA. See In re Marriage of Sabo (1986), 224 Mont. 252, 256, 730 P.2d 1112, 1114. "[T]he equitable principle arises when the [party against whom it is applied] has expressly or impliedly consented to an arrangement other than the payment of the judgment." In re Marriage of Cook (1986), 223 Mont. 293, 299, 725 P.2d 562, 566.

[I]n Montana a decree for support may be modified on equitable grounds by a court where there is clear and compelling evidence of the terms of an oral agreement of modification. . [S]uch modification may be applied only to maintenance and support payments to be made subsequent to the oral agreement for modification.

In re Marriage of Jensen (1986), 223 Mont. 434, 439, 727 P.2d 512, 515-16.

This Court's standard of review of an equitable decision is as

4

provided by § 3-2-204(5), MCA.  This Court has interpreted that standard as follows:

> [W]e are guided by a number of principles established by this Court.  The credibility of witnesses and the weight to be given their testimony are matters for the District Court's determination in a nonjury case.   Thus, in examining the sufficiency of the evidence, we must view the same in a light most favorable to the prevailing party,  and we will presume the findings and judgment by the District Court are correct.  We will not overturn the findings and conclusions of the District Court unless there is a decided preponderance of the evidence against them, and when the evidence furnishes reasonable grounds for different conclusions, the findings of the District Court will not be disturbed.  The burden of proof is on the appellant.

Lumby v. Doetch (1979), 183 Mont. 427, 431,  600 P.2d 200, 202 (citations omitted throughout).

Contrary to the suggestion of the dissent, the facts of this case are not indistinguishable from those in Sabo.  In Sabo, the decree of dissolution gave the mother sole custody of the children, but, by later agreement of the parties, two of the children lived with the father.  Sabo, 730 P.2d 1112-13.  Here, the dissolution decree provided for joint legal and shared physical child custody.  The distinction is important to a determination of whether the parties have agreed to vary the terms of the dissolution decree so that equitable estoppel may apply

During the time for which the father now seeks to be relieved from an obligation of support,  July 1991 to August 1992,  the children lived with him.  For most of that period, however, this physical custody arrangement did not differ from that specified in the California court's November 1990 order.  Under that order, the children were to spend the 1991-92 school year with their father

5

and the father's obligation for child support was to continue. Because the father has not demonstrated an agreement for an arrangement which differed from the California court's order concerning the 1991-92 school year, we conclude that equitable estoppel is not applicable for that period.

At the hearing before the special master, the father introduced into evidence a letter he received from the mother in May 1992. She wrote:

> Since they've both expressed the wish to go to school there, I guess I'll have to live with it.

The father testified that he felt the mother owed him child support from May 1992 forward. However, the mother testified that it was not until August of 1992, after she had spent the summer with her children, that she finally agreed that they could remain in Montana with their father.

In sum, the evidence of an agreement prior to August of 1992 to modify the California decree is conflicting and can hardly be termed "clear and compelling." The special master found that an agreement to modify the California decree occurred in August of 1992. That finding is supported in the record. The District Court relieved the father of his child support obligation from August 1992 forward.

Absent circumstances justifying the application of equitable estoppel prior to August 1992, and without other statutory authority to retroactively modify the California court's decree, we conclude that the District Court did not err in requiring the

6

father to pay back child support due between July 1991 and August 1992.

Affirmed.

_____
                        Chief Justice

We concur:

_____

_____

_____

_____
        Justices

7

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion. The facts in this case are indistinguishable from those in *In re Marriage of Sabo* (1987), *224* Mont. 252, *730* P.2d 1112, and our decision in that case compels reversal of the District Court's order.

In the November 13, 1990, order from the Superior Court of the State of California, Thomas was given custody of this couple's two children beginning in the summer of 1991 and through the 1991-92 school year. In what was anything but a thorough or comprehensive order, the following was the only reference to child support:

> Child support in the amount of $400.00 is ordered for both children, payable from Respondent to Petitioner, one-half on the first and one-half on the 15th of each month, commencing October 1, 1990 and continuin[g] until further court order <u>or legal cause.</u>

(Emphasis added.)

There was no further review of the California order because toward the conclusion of the 1991-92 school year, Diane wrote to Thomas and agreed that the children could remain with him during the next school year. In that regard, she stated that:

> Since they're [sic] both expressed the wish to go to school there (Whitefish) I guess I'll have to live with it, but we (the kids and I) need to be together as much as we can.

In effect, Thomas has had the responsibility for raising and supporting his children since June 21, 1991. Diane neither claimed child support during that time, nor for that period of time at the hearing which was held in Montana pursuant to Thomas's motion to modify. She claimed support for only the period from October 1,

8

1990, until June 21, 1991, when the two children moved to Montana to live with Thomas. She gave the following testimony in response to questions from her own attorney:

Q. So its your position, then that Mr. Glanville owes you that $3200?

A. Yeah, but it's more than that.

Q. Because of the 21 days in June?

A. Right. Yeah.

Q. And that's what you're asking that the court find is the $3200 plus for the 21 days?

A. Yes.

Q. How much is that per day?

A. I think it was $13.33 a day.

Q. So if my calculator is right, that's an additional $279.93?

A. Uh-huh. Yes.

Q. So it's your position then that he owes $3479.93?

A. (Witness nodded.)

Clearly then, by her "assent and conduct" Diane consented to modification of the couple's custody arrangement and child support obligation long before Thomas's motion to modify was filed in November 1992. Whether or not it is equitable to require a parent to pay his or her former spouse child support during periods of time when the couple's children are already living with and being supported by the parent from whom the obligation is claimed, was previously decided by this Court in *Marriage of Sabo*. In that case, we decided the following issue:

9

Is a non-custodial father, who assumes permanent custody and support of the children with the consent of the custodial mother, relieved of the obligation to pay child support accruing after and during the consensual assumption of custody?

*Marriage of Sabo*, 730 P.2d at 1113

We answered our own question in the affirmative. Because the facts in that case were so remarkably similar to those in this case, citation to substantial portions of our opinion is warranted:

> Thomas Sabo accepted the children into his home and raised the children without any support from Stephanie, even though she was employed as a real estate agent after her return to Bozeman. Stephanie never asserted that her current request was founded upon any actual need of her children. Furthermore, she never suggested any implied need which had not been satisfied over the years, or which had now arisen and could possibly serve to validate her action at this belated point. *See [State of Washington ex rel.] Blakeslee [v. Horton]*, 722 P.2d at 1151.

> Although Thomas took no action to change the terms of the divorce decree, he accepted sole responsibility for the children's health, welfare and support. During the period of Thomas' care, Stephanie's major contribution was sharing her Mexican vacation with Erin. Such inequity cannot validate her claim. "Although legally the mother may have been correct in her claim for child support, equity demands that the claim must fail. This Court has long adhered to such principles of equity." *Blakeslee*, 722 P.2d at 1151.

> The Sabo children voluntarily moved in with Thomas. During the entire period the children lived with Thomas, Stephanie neither pursued support payments in arrears nor objected to the shift in custody. By her assent and conduct, Stephanie consented to the arrangement. As we recently held, "[T]he equitable principle arises when the mother has expressly or impliedly consented to an arrangement other than the payment of the judgment." *In Re Marriage of Cook* (Mont. 1986), 725 P.2d 562, 566, 43 St. Rep. 1732, 1737. This principle acknowledges that the real beneficiaries of the judgment are the children, not the person named in the judgment. . .

*Never*, during the entire period that the Sabo children were being raised by Thomas, did Stephanie offer any financial assistance to Thomas. In *Cook*, we noted that <u>circumstances may not allow the mother to collect child support in arrears, "where the husband has made expenditures which constitute substantial compliance with the spirit and intent of the decree."</u> *Cook*, 725 P.2d at 566. Thomas has met both the spirit and the purpose of child support obligations. Thomas did not abrogate his duties and obligations under the decree of dissolution. On the contrary, he assumed the duties of the custodial parent by default, after Stephanie relinquished them.

. . . .

Under the equitable principles of *Blakeslee, Cook* and *Jensen*, we hold that Thomas substantially complied with the decree obligations. By her assent and conduct, Stephanie consented to the shift in custody and support. We cannot equitably allow Stephanie to reap a windfall of support payments, if she never made the support expenditures. "A party to an agreement which has been performed for some length of time is estopped to deny its validity." *Jensen*, 727 P.2d at 516, 43 St.Rep. at 1895. Thomas is therefore relieved of the obligation to pay any child support accruing after and during his consensual assumption of custody.

*Marriage of Sabo*, 730 P.2d at 1113-14 (emphasis added). All that was said in *Sabo* applies to this case. The majority suggests that *Sabo* is somehow distinguishable from this case because in *Sabo* the mother had been given sole custody, while in this case the parents had joint custody. However, that distinction is irrelevant and misses the whole point of the *Sabo* decision. That case simply stands for the principle that one parent should not be forced to pay support to the other parent when, in reality, he or she is raising and supporting the very children who are the subject of the support obligation. The basis for our *Sabo* decision was that "where the husband has made expenditures which constitute substantial

11

compliance with the spirit and intent of the decree," the mother may not collect child support in arrears. *Sabo*, 730 P.2d at 1114. That decision had nothing to do with the fact that the mother had been given sole custody, as opposed to joint custody. The majority observes a distinction that truly makes no difference.

This couple's children lived with Thomas, at his expense, from June 21, 1991, to the present time. During that time, Diane contributed nothing to their support. By paying for their support directly, Thomas substantially complied with his obligations established in the California order. To hold that Diane can come back and collect further support from Thomas for a substantial period of time during which she expended nothing for support of her children not only ignores reality, it ignores our prior decisions on this subject and our obligation to accomplish equity in dissolution and support proceedings. For these reasons, I dissent from the majority opinion. It is this kind of blind adherence to technicality that breeds disrespect for the law. I would reverse the order of the District Court and conclude that Thomas owed no support to Diane from June 21, 1991--the date on which he assumed custody of, and the responsibility for the actual support of, his children.

_____
Justice

12