JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion. The facts in this case are indistinguishable from those in In re Marriage of Sabo (1987), 224 Mont. 252, 730 P.2d 1112, and our decision in that case compels reversal of the District Court’s order.
In the November 13, 1990, order from the Superior Court of the State of California, Thomas was given custody of this couple’s two children beginning in the summer of 1991 and through the 1991-92 school year. In what was anything but a thorough or comprehensive order, the following was the only reference to child support:
Child support in the amount of $400.00 is ordered for both children, payable from Respondent to Petitioner, one-half on the first and one-half on the 15th of each month, commencing October 1, 1990 and continuin[g] until further court order or legal cause.
(Emphasis added.)
There was no further review of the California order because toward the conclusion of the 1991-92 school year, Diane wrote to Thomas and agreed that the children could remain with him during the next school year. In that regard, she stated that:
Since they’re [sic] both expressed the wish to go to school there (Whitefish) I guess I’ll have to live with it, but we (the kids and I) need to be together as much as we can.
In effect, Thomas has had the responsibility for raising and supporting his children since June 21,1991. Diane neither claimed child support during that time, nor for that period of time at the hearing which was held in Montana pursuant to Thomas’s motion to modify. She claimed support for only the period from October 1, 1990, until June 21, 1991, when the two children moved to Montana to live with Thomas. She gave the following testimony in response to questions from her own attorney:
*27 Q. So its your position, then that Mr. Glanville owes you that $3200?
A. Yeah, but it’s more than that.
Q. Because of the 21 days in June?
A. Right. Yeah.
Q. And that’s what you’re asking that the court find is the $3200 plus for the 21 days?
A. Yes.
Q. How much is that per day?
A. I think it was $13.33 a day.
Q. So if my calculator is right, that’s an additional $279.93?
A. Uh-huh. Yes.
Q. So it’s your position then that he owes $3479.93?
A. (Witness nodded.)
Clearly then, by her “assent and conduct” Diane consented to modification of the couple’s custody arrangement and child support obligation long before Thomas’s motion to modify was filed in November 1992. Whether or not it is equitable to require a parent to pay his or her former spouse child support during periods of time when the couple’s children are already living with and being supported by the parent from whom the obligation is claimed, was previously decided by this Court in Marriage of Sabo. In that case, we decided the following issue:
Is a non-custodial father, who assumes permanent custody and support of the children with the consent of the custodial mother, relieved of the obligation to pay child support accruing after and during the consensual assumption of custody?
Marriage of Sabo, 730 P.2d at 1113.
We answered our own question in the affirmative. Because the facts in that case were so remarkably similar to those in this case, citation to substantial portions of our opinion is warranted:
Thomas Sabo accepted the children into his home and raised the children without any support from Stephanie, even though she was employed as a real estate agent after her return to Bozeman. Stephanie never asserted that her current request was founded upon any actual need of her children. Furthermore, she never suggested any implied need which had not been satisfied over the years, or which had now arisen and could possibly serve to validate her action at this belated point. See [State of Washington ex rel.] *28 Blakeslee [v. Horton], [222 Mont. 351], 722 P.2d [1148] at 1151 [1986],
Although Thomas took no action to change the terms of the divorce decree, he accepted sole responsibility for the children’s health, welfare and support. During the period of Thomas’ care, Stephanie’s major contribution was sharing her Mexican vacation with Erin. Such inequity cannot validate her claim. “Although legally the mother may have been correct in her claim for child support, equity demands that the claim must fail. This Court has long adhered to such principles of equity.” Blakeslee, 722 P.2d at 1151.
The Sabo children voluntarily moved in with Thomas. During the entire period the children lived with Thomas, Stephanie neither pursued support payments in arrears nor objected to the shift in custody. By her assent and conduct, Stephanie consented to the arrangement. As we recently held, “[T]he equitable principle arises when the mother has expressly or impliedly consented to an arrangement other than the payment of the judgment.” In Re Marriage of Cook (1986), [223 Mont. 293], 725 P.2d 562, 566, 43 St. Rep. 1732, 1737. This principle acknowledges that the real beneficiaries of the judgment are the children, not the person named in the judgment. ...
Never, during the entire period that the Sabo children were being raised by Thomas, did Stephanie offer any financial assistance to Thomas. In Cook, we noted that circumstances may not allow the mother to collect child support in arrears, “where the husband has made expenditures which constitute substantial compliance with the spirit and intent of the decree.” Cook, 725 P.2d at 566. Thomas has met both the spirit and the purpose of child support obligations. Thomas did not abrogate his duties and obligations under the decree of dissolution. On the contrary, he assumed the duties of the custodial parent by default, after Stephanie relinquished them.
Under the equitable principles of Blakeslee, Cook and Jensen, we hold that Thomas substantially complied with the decree obligations. By her assent and conduct, Stephanie consented to the shift in custody and support. We cannot equitably allow Stephanie to reap a windfall of support payments, if she never made the support expenditures. “A party to an agreement which has been *29 performed for some length of time is estopped to deny its validity.” Jensen, 727 P.2d at 516, 43 St.Rep. at 1895. Thomas is therefore relieved of the obligation to pay any child support accruing after and during his consensual assumption of custody.
Marriage of Sabo, 730 P.2d at 1113-14 (emphasis added). All that was said in Sabo applies to this case. The majority suggests that Sabo is somehow distinguishable from this case because in Sabo the mother had been given sole custody, while in this case the parents had joint custody. However, that distinction is irrelevant and misses the whole point of the Sabo decision. That case simply stands for the principle that one parent should not be forced to pay support to the other parent when, in reality, he or she is raising and supporting the very children who are the subject of the support obligation. The basis for our Sabo decision was that “where the husband has made expenditures which constitute substantial compliance with the spirit and intent of the decree,” the mother may not collect child support in arrears. Sabo, 730 P.2d at 1114. That decision had nothing to do with the fact that the mother had been given sole custody, as opposed to joint custody. The majority observes a distinction that truly makes no difference.
This couple’s children lived with Thomas, at his expense, from June 21, 1991, to the present time. During that time, Diane contributed nothing to their support. By paying for their support directly, Thomas substantially complied with his obligations established in the California order. To hold that Diane can come back and collect further support from Thomas for a substantial period of time during which she expended nothing for support of her children not only ignores reality, it ignores our prior decisions on this subject and our obligation to accomplish equity in dissolution and support proceedings. For these reasons, I dissent from the majority opinion. It is this kind of blind adherence to technicality that breeds disrespect for the law. I would reverse the order of the District Court and conclude that Thomas owed no support to Diane from June 21, 1991 — the date on which he assumed custody of, and the responsibility for the actual support of, his children.