No. 98-061

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 267

IN RE THE MARRIAGE OF

CLIFFORD DAVID SHORTEN,

Petitioner and Respondent,

and

MICHELE MARIE SHORTEN,

Respondent and Appellant.

APPEAL FROM: District Court of the Judicial District,

In and for the County of Yellowstone,

The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Stephen C. Mackey, Towe, Ball, Enright, Mackey & Sommerfeld, Billings, Montana

For Respondent:

J. Mayo Ashley, Helena, Montana

Submitted on Briefs: June 11, 1998

Decided: November 6, 1998

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

**¶1. Michele Marie Shorten appeals from a judgment of the Thirteenth Judicial District Court, Yellowstone County, that the doctrine of equitable estoppel bars her from collecting delinquent child support from Clifford David Shorten. We affirm.**

**¶2. We restate the issues as follows:**

**¶3. 1. Whether the District Court erred in ruling that equitable estoppel should be applied.**

**¶4. 2. Whether the court erred by failing to permit the mother to examine and cross-examine witnesses relating to the issue of visitation and efforts made by the father to contact the minor child.**

**¶5. The marriage of Clifford David Shorten (the father) and Michele Marie Shorten (the mother) was dissolved in 1985. The parties are the parents of a daughter born in 1984. In the decree of dissolution, they were awarded joint custody of their daughter, with the mother as the primary residential custodian. The father was granted reasonable visitation and was ordered to pay $100 per month in child support and to maintain the child on his accident and health insurance policy.**

**¶6. When the marriage was dissolved, the mother and the child lived in Billings, Montana, and the father lived in Jefferson City, Montana. In early 1987, the mother remarried and informed the father that she, her new husband, and the child were moving to Arizona. The mother asked the father to consent to her new husband's adoption of the child, but the father refused. He instead filed a motion to modify the terms of the custody arrangement to make him the primary physical custodian of his daughter. However, the mother relocated to Arizona before that motion was served on her, and the court never considered the motion.**

**¶7. The mother did not provide the father with her address or telephone number in**

Arizona. When the father contacted the mother's family and asked for her address in Arizona, he was denied that information. The mother and child resided in Arizona for approximately four years, then returned to Billings for three to four months. After that, they moved to Las Vegas, Nevada, for three years. They then moved to Virginia for three months and then to North Carolina for a year. At no time during this period did the mother inform the father of her address or make any demand for child support.

¶8. In May 1995, the mother's third marriage ended and she again moved back to Billings, Montana. In October of 1996, she contacted the father, who then visited his daughter and began paying child support. The father has maintained health insurance on the child since the parties' marriage was dissolved.

¶9. In April 1997, the mother filed with the Clerk of the Thirteenth Judicial District Court an affidavit in support of writ of execution in which she asserted that the father owed her a total of $18,239.41 for unpaid child support and interest thereon. She executed upon the father's bank account, obtaining $959. The parties subsequently stipulated to a modification of current and future child support.

¶10. The only issue at trial was whether the mother should be prevented, under the doctrine of equitable estoppel, from collecting back child support prior to April 1997. After a hearing, the District Court entered a written judgment finding that the elements of equitable estoppel were present and concluding that the mother's conduct barred her from collecting any claimed arrearage in child support. The mother appeals.

## ISSUE 1

¶11. Did the District Court err in ruling that equitable estoppel should be applied?

¶12. This issue combines two of the mother's arguments, that the court did not consider the proper elements of equitable estoppel, and that the court's findings are not supported by clear and convincing evidence. We first review the elements of equitable estoppel.

¶13. The mother contends that the elements of equitable estoppel in a child support arrearages context are: (1) substantial and continuing change in circumstances

No

rendering enforcement of the original decree of child support inequitable; (2) mutual agreement made between the parties in good faith; and (3) conduct over a period of years consistent with the agreement, citing *In re Marriage of Hooper* (1991), 247 Mont. 322, 324, 806 P.2d 541, 543.

The mother argues that because the court acknowledged that there was no agreement between the parties in this case, "it is impossible for the [c]ourt to have concluded by clear and convincing evidence that there was such an agreement, as required by *Hooper* and other cases from this Court."

¶14. In *Hooper,* the mother sought to recover $23,250 in child support arrearages. The support obligor father testified that he did not know the mother's feelings during the years in which he did not pay child support, but his impression was that if he stayed away she would not require him to pay it. We agreed with the district court that the father's impression was not a mutual agreement and that the mother's contradictory testimony that the father could have requested visitation at any time rendered the equitable estoppel exception to retroactive modification of child support inapplicable. *Hooper*, 247 Mont. at 325, 806 P.2d at 543.

¶15. The abbreviated statement of the elements of equitable estoppel in back-due child support cases as set forth in *Hooper* and upon which the mother relies was first articulated in *In re Marriage of Jensen* (1986), 223 Mont. 434, 439-40, 727 P.2d 512, 515-16. In *Jensen*, the mother and father reached an oral agreement to reduce the father's child support obligation and followed that oral agreement for several years. This Court held that this was an enforceable oral agreement. *Jensen*, 223 Mont. at 440, 727 P.2d at 515.

¶16. One of the cases relied upon in *Jensen* was *In re Marriage of Cook* (1986), 223 Mont. 293, 725 P.2d 562. In *Cook*, the Court took a broad view of the "agreement" aspect of estoppel concerning past due child support, stating, "[t]he courts are generally reluctant to state any general rule as to when an estoppel arises, but generally the equitable principle arises when the mother has expressly *or impliedly* consented to an arrangement other than the payment of the judgment." *Cook*, 223 Mont. at 299, 725 P.2d at 566 (emphasis added) (citing *State of Washington ex rel. Blakeslee v. Horton* (1986), 222 Mont. 351, 722 P.2d 1148 and *Headley v. Headley* (Ala. 1964), 172 So.2d 29, 33). This articulation was narrowed, without explanation, in *Jensen.* It was this narrower version which was later set forth in the list of

elements of equitable estoppel in child support arrearages cases in *Hooper.*

¶17. We hold that the "agreement" element of equitable estoppel as set forth in *Hooper* and *Jensen* does not preclude the application of equitable estoppel to attempts to recover back child support payments where there is no written or oral agreement but the obligee parent has impliedly consented to an arrangement other than the payment of the judgment and the elements of equitable estoppel are otherwise present. To that extent, the elements of equitable estoppel in an action for back-due child support as set forth in *Hooper* and *Jensen* are not universally applicable.

¶18. In this case, instead of applying the elements of equitable estoppel as set forth in *Hooper* and *Jensen*, the District Court used the general statement of the elements of equitable estoppel set forth in *In re Marriage of KEV* (1994), 267 Mont. 323, 331-32, 883 P.2d 1246, 1252: (1) conduct, acts, language, or silence amounting to a representation or concealment of material facts; (2) these facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the party claiming the benefit of estoppel at the time it was acted upon; (4) the conduct must be done with the intent, or at least with the expectation, that it will be acted upon by the other party or under circumstances that it is both natural and probable that it will be so acted upon; (5) the conduct must be relied upon by the other party and, thus relying, he must be led to act upon it; and (6) he must in fact act upon it so as to change his position for the worse. The District Court reasoned that equitable estoppel does not require both an agreement and conduct, and that in this case the conduct of the mother "speaks louder than any oral or written agreement."

¶19. Findings of fact justifying the application of equitable estoppel must be supported by clear and convincing evidence. *Hooper*, 247 Mont. at 324, 806 P.2d at 543. The mother argues that the court's findings were not supported by that quantum of evidence. Her argument, however, depends solely on her contention that an agreement between the parties is required for equitable estoppel to apply. We have rejected that contention. We therefore proceed to examine the record to determine whether it supports the District Court's decision that the father established the six elements of equitable estoppel as set forth in *Marriage of KEV*.

¶20. The evidence showed that after the mother left the state of Montana with her daughter in 1987, she refused any communication with the father for over eight years; although she knew where he lived and where he worked, she did not tell him and would not allow her family to tell him where she and his daughter lived (silence amounting to a concealment of material fact, known to the mother at the time of her conduct, and unknown to the father). The mother did not seek any child support or medical insurance assistance during this time. Her position, as she stated in court, was that the husbands to whom she was then married provided very well for her and the child and that she did not see any need for support from the father (conduct done with the intent that it would be acted upon by the father). The father, not knowing where to send child support, did not send any child support (mother's conduct was relied upon by the father so that he was led to act upon it, changing his position for the worse).

¶21. After reviewing the record, we are satisfied that the court's findings of fact justifying the application of equitable estoppel are supported by clear and convincing evidence. We therefore hold that the District Court did not err in ruling that the mother is barred from collecting back child support for the time during which she secreted herself and the child from the child's father.

ISSUE 2

¶22. Did the court err by failing to permit the mother to examine and cross-examine witnesses relating to the issue of visitation and efforts made to contact the minor child?

¶23. This Court's standard of review of a trial court's evidentiary ruling is whether the trial court abused its discretion; absent an abuse of discretion, this Court will not overturn the trial court's ruling. *State v. Gollehon* (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263.

¶24. The mother complains that she was not allowed to cross-examine the father as to his testimony concerning his efforts to pay support or to see his daughter. In cutting off cross-examination of the father on this point, the District Court reasoned as follows:

It's simple. The child and the child's mother left the state of Montana, he remained in

Montana, did she have contact with him, give him the child's address, her address, her telephone number? He's testified that she hasn't. I believe her testimony is substantially the same. But let's hear on that point. That seems to be the significant issue here, not whether or not he could have gotten more than one telephone book from Phoenix, Arizona.

The mother also complains that the court cut off her attorney's examination of her concerning whether the father attempted to visit his daughter after the dissolution. In so doing the court stated:

All right. Let's don't discuss it [visitation]. Let's discuss the issues that are before this Court, that is, whether or not something occurred between these parties that would preclude in equity your client collecting the unpaid child support. And I don't think visitation has anything to do with that, so let's proceed on.

The mother argues that in a case in which the court ruled in equity, it was unfair to disallow evidence that the father did not make adequate efforts to visit or contact his daughter.

**¶25. We agree with the District Court. Whether the father made efforts to see the daughter was irrelevant to the elements of equitable estoppel, specifically as to whether the mother's conduct established an arrangement that the father would not pay child support. We conclude that the District Court did not abuse its discretion in failing to permit the mother to examine and cross-examine witnesses relating to the father's efforts to visit and contact the minor child.**

**¶26. Affirmed.**

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

Justice James C. Nelson dissents.

¶27 I dissent from the Court's opinion as to Issue 1, and I would reverse. Accordingly, I would not address Issue 2.

¶28 At the outset, I note that § 40-4-208(1), MCA, allows only for the *prospective* modification of child support payments. *In re Marriage of Hooper* (1991), 247 Mont. 322, 324, 806 P.2d 541, 543. We have also held that each child support payment "becomes a judgment debt similar to any other judgment for money." *Willoughby v. Loomis* (1994), 264 Mont. 44, 49, 869 P.2d 271, 274 (quoting *In re Marriage of Sabo* (1986), 224 Mont. 252, 254, 730 P.2d 1112, 1113).

¶29 Notwithstanding our case law which holds that this statutory provision should be strictly construed, *In re Marriage of Petranek* (1992), 255 Mont. 458, 460, 843 P.2d 784, 786, the trial court, and now this Court, have effectively modified Clifford's past-due child support obligation to zero and have, thereby, *retroactively* deprived Michele of her judgment. We justify this result on the basis of equitable estoppel. I disagree.

¶30 Ordinarily, and even though the child's custodian fails promptly to seek compliance with a support order, equitable doctrines of laches and estoppel will not be applied to relieve a parent-obligor of past-due child support obligations. The theory behind this rule is that such payments are for the child's benefit and that inaction by the custodian should not inure to the benefit of the person choosing not to make such payments and, thus, allow him or her to profit thereby. *See Fitzgerald v. Fitzgerald* (1980), 190 Mont. 66, 618 P.2d 867.

¶31 Nonetheless, this Court has carved out a narrow equitable exception to the statutory rule in cases where the parties have orally agreed to modify an existing child support order, and have relied on that oral modification. *In re Marriage of Widhalm* (1996), 279 Mont. 97, 101, 926 P.2d 748, 751 (citing *In re Marriage of Jensen* (1986), 223 Mont. 434, 727 P.2d 512). However, this exception applies only when there are extraordinary or exceptional circumstances that include: (1) a substantial and continuing change in circumstances rendering enforcement of the original decree of child support inequitable; (2) mutual agreement between the parties made in good faith; and (3) conduct over a period of years consistent with the agreement. These elements must be established by clear and convincing evidence and apply only to payments due subsequent to the mutual agreement. *Hooper*, 247 Mont. at 324, 806 P.2d at 543 (citing *Jensen*, 223 Mont. at 438-40, 727 P.2d at 515-16). *See also In re Marriage of Guckeen* (1989), 240 Mont. 136, 782 P.2d 1284; *State ex rel. Blakeslee v. Horton* (1986), 222 Mont. 351, 722 P.2d 1148.

¶32 In the case *sub judice*, it is undisputed that these elements were not fulfilled. There is no evidence of any agreement between the parties--either express or implied--relieving Clifford of his child support obligations. In fact, both parties testified that there was no agreement between them.

¶33 Rather than simply applying § 40-4-208(1), MCA, and our clearly articulated case law to the facts of this case, the majority summarily does away with the "agreement" element of our judicially created narrow exception. We justify this decision on the basis of *In re Marriage of KEV* (1994), 267 Mont. 323, 883 P.2d 1246, a case that had absolutely nothing to do with allowing retroactive modifications of child support orders on the basis of equitable theories. (*KEV* utilized classic six element equitable estoppel analysis to create parentage by estoppel. *KEV*, 267 Mont. at 331-34, 883 P.2d at 1252-53).

¶34 While this approach certainly achieves the result which the Court apparently finds more palatable under the facts of this case, I believe that, in ignoring the law, we have

done grave damage to the finality and the sanctity of child support judgments in general; we have summarily and unconstitutionally deprived Michele of an important, vested property right to collect an accrued judgment; and we have established a precedent that will make it immeasurably easier for deadbeat parents to avoid their child support obligations. I cannot agree with this approach.

¶35 I would reverse the trial court's decision and reinstate Michele's judgment. I dissent from our failure to do so.

/S/ JAMES C. NELSON

Justice W. William Leaphart concurs in the foregoing dissent.

/S/ W. WILLIAM LEAPHART