No. 03-306

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 82

IN RE THE MARRIAGE OF

TERRI WINTERS, n/k/a Terri Murphy,

        Petitioner and Appellant,

    v.

MICHAEL WINTERS,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and for the County of Gallatin, Cause No. DR-94-345,
The Honorable William Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Jane Mersen, Kasting, Kauffman & Mersen, P.C., Bozeman, Montana

        For Respondent:

            Jeanette Ellen Berry, Berry Law Office, Bozeman, Montana

Submitted on Briefs: October 2, 2003

Decided: April 1, 2004

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Terri Murphy (Terri) appeals from an order of the Eighteenth Judicial District Court, Gallatin County, regarding past due child support, past due medical support, and execution on a judgment for the property division with her ex-husband Mike Winters (Mike). We affirm in part, reverse in part, and remand for proceedings consistent with this Opinion.

¶2     We address the following issues on appeal:

¶3     1.  Did the District Court violate § 40-4-208, MCA, when it ordered a deferred payment plan for past due child support and past due medical support?

¶4     2.  Did the District Court err in declining to hold Mike in contempt of its past orders?

¶5     3.  Did the District Court err in ordering Mike was not required to pay interest on the past due child support?

¶6     4.  Did the District Court err in exempting one of Mike's business accounts from execution by Terri?

¶7     5.  Did the District Court err when it denied Terri's request for attorney fees and costs pursuant to their original settlement agreement?

¶8     6.  Is Terri entitled to attorney fees and costs on appeal?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶9     Terri and Mike married in 1986 and divorced in 1995. They had four children during their marriage, all of whom are still minors. The parties entered into a settlement agreement which was incorporated into the divorce decree. Among its terms, the agreement provided that Mike would pay Terri $1,065 a month in child support and would pay one-half of the

2

children's uncovered medical expenses. The parties also agreed that Mike would pay specific sums and assume certain debts as part of their property division settlement. In addition, the agreement provided that in an enforcement action, the prevailing party would be entitled to attorney fees.

¶10 In 1996, Terri brought a motion for contempt because Mike failed to pay the child support, medical support, or property settlement amounts owed. While her motion was pending, both Mike and the company he ran, Winters Roof Co., Inc., filed for bankruptcy. Before the bankruptcy was finalized, the District Court found Mike in contempt of the divorce decree. The District Court lowered Mike's monthly child support payment to $900 per month for five years, per stipulation of the parties, and ordered Mike to pay the delinquent child support, medical support, and property settlement amounts then due. Terri was also awarded attorney fees incurred as a result of the contempt motion. Subsequently, the bankruptcy court discharged part of the property settlement that Mike was to pay Terri and also discharged the attorney fees she was awarded as a result of the contempt proceeding. However, the bankruptcy court also declared that $16,363.63 of the property settlement Mike owed Terri was nondischargeable.

¶11 Because Mike continued to be delinquent on child support payments, Terri sought assistance from the Child Support Enforcement Division (CSED). The CSED initiated license suspension proceedings to suspend Mike's driver's license. During the administrative proceedings, Mike appeared and requested that his monthly child support obligation be modified due to the decrease in income he suffered after the bankruptcy. CSED lowered his

payment to $612 per month in November 1997. The CSED also determined Mike's child support debt to be $13,234.92. As part of its proceedings, the CSED offered to stay its license suspension process if Mike agreed to pay $612 per month plus $50 per month towards his child support arrearages. On June 12, 1998, Mike agreed to the $662 monthly payment in a License Suspension Financial Hardship Payment Plan Agreement. This agreement provided that its terms would continue for only one year.

¶12    About a month after Mike signed this agreement, he went to Terri and asked her if she would get CSED "off his back." The parties then made an oral agreement that Mike would pay $700 per month and that $88 of this payment would go towards Mike's child support arrearages. While Mike did not make timely payments each month, he was always able to eventually bring his $700 payments current. This agreement continued for a few years until the proceedings at issue here.

¶13    In the summer of 2001, Mike's relationship with his oldest child began to deteriorate. Their relationship worsened to the point that a counselor the child was seeing as a result of these problems recommended that she have no contact with Mike. Because Mike made clear he would not alter his visitation rights with his daughter without a court order, Terri moved to amend the parenting plan in May 2002. As part of this motion, Terri sought to modify the child support payments as she believed a new parenting plan would necessitate child support adjustments. A week later Terri also moved for an order holding Mike in contempt because he failed to pay child support for three months, failed to pay his share of the children's uncovered medical expenses, and failed to pay the property settlement that survived the

4

bankruptcy. However, later testimony established that Mike paid the three delinquent months after Terri filed the motion.

¶14 Subsequently, Terri and Mike were able to agree to modifications of the parenting plan. Their agreement was incorporated into an order by the court. However, the parties could not settle their financial disputes. Further, while the proceedings were pending, Terri executed on a number of Mike's accounts which he used personally and to conduct his roofing business. As a result, the clerk of court received $10,750 that Mike had designated for business expenses on a roofing project. The contractor that subcontracted the job to Mike wrote to the court, requesting that the $10,750 be released for Mike's payroll expenses.

¶15 Following a contentious discovery process regarding Mike's income and expenses, the court held a hearing on Terri's motion for contempt and Mike's motion to dismiss. Both parties testified and introduced evidence.

¶16 The District Court then issued its findings of fact, conclusions of law, and a later judgment. First, the court found that Mike owed $13,234.92 in child support arrearages based on the CSED determination. The court also found Mike owed $5,288 in medical support arrearages based on evidence submitted by Terri. The court then found that the parties followed the CSED payment plan for a number of years even though it expired in one year. Based on these facts, the court held that Mike was not in contempt of court because he had regularly paid child support. In addition, of the $88 paid each month above $612, the court designated $50 towards child support arrearages for a total of $2,850 and $38 towards medical support arrearages for a total of $2,166.

5

¶17 Further, based on Mike's representations that he could afford to pay more, the court increased Mike's monthly payment by $200 to $812 per month. The court designated $100 of that payment toward child support arrearages and $100 to medical support arrearages. The court waived interest on the child support arrearages, but allowed interest to accrue on the medical support arrearages as of the date of its order. The court also noted interest of $10,474.24 had accrued on the property settlement judgement from the date the bankruptcy court declared the nondischargeable amount was owed.

¶18 The court also determined that a contempt proceeding was not the proper forum to enforce the judgment for the property settlement. At Mike's request, the court also ordered that one bank account would be exempt from execution for the property settlement judgment so that Mike could continue to conduct his roofing business. Regarding the $10,750, the court released the money to Mike with the requirement that Mike file regular accountings with the court to prove the money was being used for legitimate business expenses. Finally, the court held that Terri was not entitled to attorney's fees because she did not prevail on the contempt motion. Terri now appeals. Further facts are discussed in detail below.

## II. DISCUSSION

### ISSUE ONE

¶19 **Did the District Court violate § 40-4-208, MCA, when it ordered a deferred payment plan for past due child support and past due medical support?**

¶20 Before we address this issue, we first clarify that Terri disputes only how past due child support and past due medical support is to be paid. She does not contest the current

6

amount of child support. Specifically, although Terri asked for modification of current child support when she filed her motion to amend the parenting plan, she does not appeal from the order setting $612 per month as child support. In addition, although the October 1996 order set the child support at $900 per month for five years, Terri does not dispute the present determination that such child support be set at $612 per month. Finally, although the CSED can no longer modify monthly child support amounts without district court approval pursuant to our decision in *Seubert v. Seubert*, 2000 MT 241, 301 Mont. 382, 13 P.3d 365, the 1997 CSED action setting Mike's payment at $612 per month was valid because our decision in *Seubert* was not retroactive. Therefore, we focus only on the District Court's determination that Mike may make periodic payments of $100 per month for past due child support and $100 per month for past due medical support, rather than paying all past due amounts immediately.

¶21    Terri asserts the District Court's payment schedule violates § 40-4-208, MCA, because the $200 per month payment plan constitutes a retroactive modification of child support and medical support owed under a prior order which was due prior to her motion. She cites *Williams v. Budke* (1980), 186 Mont. 71, 606 P.2d 515, in support of her argument that a district court cannot make an exception to § 40-4-208, MCA, and set up a deferred payment plan for past due support, without first finding the payor in contempt of one of the court's previous orders. Terri notes the District Court did not find Mike in contempt here, so it did not have the power to restrict her right to execute for the past due amounts by setting up a payment plan.

7

¶22 Terri also notes the court erroneously found Mike made 57 payments toward the past due amounts because the court assumed he continued to make such payments after the November 2002 hearing until the Court entered its February 2003 findings of fact and conclusions of law. In other words, Terri asserts the court improperly credited Mike for arrearages because he stopped making any arrearage payments after the November hearing. Finally, Terri requests this Court to order that a judgment be entered for the full past due amounts, as she requested in the District Court.

¶23 Mike argues the District Court was allowed to set a payment plan for past due amounts even though it did not find him in contempt because the court essentially determined that he followed an agreement made by the parties for past due amounts. He asserts that under *In re Marriage of Cook* (1986), 223 Mont. 293, 725 P.2d 562, and *In re Marriage of Jensen* (1986), 223 Mont. 434, 727 P.2d 512, an oral agreement between the parties followed for a number of years constitutes estoppel, another exception to strict application of § 40-4-208, MCA. Mike asserts that estoppel exempts those past due amounts from execution. We also note that Mike does not argue the District Court should not have increased the monthly payments towards arrearages even though the increase is not pursuant to any agreement between the parties.

¶24 After reviewing the record, we hold the District Court properly set up a payment plan for the past due child support because of the prior agreement between the parties. However, we also hold the District Court improperly set up a payment plan for the past due medical support because the parties made no prior agreement regarding medical support. We first

8

address the rules governing the issue.

¶25    The general rule is that each installment of support becomes a judgment debt when it becomes past due under a divorce decree. *In re Marriage of Hooper* (1991), 247 Mont. 322, 327, 806 P.2d 541, 544; *In re Marriage of Sabo* (1986), 224 Mont. 252, 254, 730 P.2d 1112, 1113; *Williams*, 186 Mont. at 77, 606 P.2d at 518. The party to whom the support is owed can execute on this judgment. Section 40-4-208(1), MCA, codifies this rule in that a court may not retroactively modify support payments that are already past due. The statute reads: "a decree may be modified by a court as to support only as to installments accruing subsequent to actual notice to the parties of the motion for modification." We have held § 40-4-208(1), MCA, prevents a court from cancelling past due amounts or providing the manner in which past due amounts may be paid, thereby preventing execution. *Dahl v. Dahl* (1978), 176 Mont. 307, 577 P.2d 1230 *overruled on other grounds by In re Marriage of Sabo* (1986), 224 Mont. 252, 730 P.2d 1112; *Williams*,186 Mont. at 75-78, 606 P.2d at 517-19.

¶26    However, there are exceptions to this rule, two of which are relevant here. For example, we held in *Williams* that a court may set a payment plan for past due amounts if the court first finds the payor in contempt of a previous order of the court. *Williams*, 186 Mont. at 78, 606 P.2d at 519. The contempt finding of the court gives it jurisdiction to enforce a support order by staying punishment for contempt if the defaulting party purges the contempt by making the designated payments.

¶27    As another example, a court can order retroactive modification of child support

9

payments if the principles of estoppel which this Court has adopted for support payments apply. This exception requires proof that the parties made a prior agreement in good faith to modify such payments and then followed that agreement for a significant period of time. *Marriage of Hooper*, 247 Mont. at 324, 806 P.2d at 543. This exception applies only when there is also a substantial and continuing change in circumstances rendering the prior order inequitable. *See also Willoughby v. Loomis* (1994), 264 Mont. 44, 869 P.2d 271. Under either of these exceptions, the payee may be precluded from executing on past due amounts.

¶28 We assess the District Court's actions in light of these rules. First, by ordering a payment plan for past due amounts, the District Court retroactively modified payments accruing previous to Terri's motion. Therefore, the court's action was only proper if it falls within an exception to the strict rule of § 40-4-208, MCA. As we discuss below, we hold the District Court did not abuse its discretion when it decided not to hold Mike in contempt of court. Accordingly, the exception allowing a court ordered payment plan for past due amounts based on a finding of contempt does not apply here.

¶29 In contrast, the long established estoppel exception to § 40-4-208, MCA, applies in this instance because of the agreement Mike and Terri made and then followed. Terri initially argues Mike is not entitled to raise the estoppel argument because he did not argue estoppel in his brief in opposition to her motion or raise it at the hearing and the trial court *sua sponte* retroactively modified the past due support installments. However, because Mike and Terri presented undisputed facts regarding an agreement between the parties which served as the basis for the District Court's payment plan, because Terri asserted the existence

10

an agreement in her motion for contempt, and because the District Court acted on the evidence before it, this Court will address the application of estoppel to the facts here.

¶30 We have held estoppel as it relates to support payments occurs when there is (1) a substantial and continuing change in circumstances rendering enforcement of the original decree of child support inequitable; (2) mutual agreement between the parties made in good faith; and (3) conduct over a period of years consistent with the agreement. *Marriage of Hooper*, 247 Mont. at 324, 806 P.2d at 543. When there is not mutual agreement between the parties, the generally applicable elements of estoppel might also apply to allow retroactive modification. *See, e.g., In re Marriage of Shorten*, 1998 MT 267, ¶ 18, 291 Mont. 317, ¶ 18, 967 P.2d 797, ¶ 18.

¶31 In this case, both parties testified to making an express agreement with each other in July 1998. Therefore, we consider the elements of estoppel as set forth in *Hooper*. Terri asserts in her contempt motion that: "the parties agreed that Mike would pay Terri directly and since that time he has paid $700 each month." Mike testified that according to the agreement between the parties, of the $88 additional payment, $38 would go to past child support and $50 was to be designated however Terri wished. Terri testified they agreed the $88 was to go toward the child support arrearages. Therefore, the evidence is undisputed that the parties made and followed an agreement in good faith regarding past due child support for over three years. Even though Mike did not pay for the three months prior to Terri's contempt motion, by the time the hearing was conducted, Mike was current with the $700 per month payment. Because Terri does not dispute the propriety of change in current

11

child support due from $1065 per month to $612 per month, the facts demonstrate substantial and continuing change rendering enforcement of the original order as inequitable. Therefore, their undisputed agreement satisfies all the elements of the estoppel exception to § 40-4-208, MCA, as set out in *Hooper*, and the District Court did not err in finding Mike was entitled to rely on Terri's conduct in making the agreement with him and then following it for a substantial period of time.

¶32     Although the court did not analyze the elements of estoppel in detail, it stated "[w]hile the [CSED] financial hardship plan expired in a year, the parties have acted in accordance with the agreement." This finding essentially embodies the estoppel exception. Accordingly, the District Court had authority to retroactively modify past due child support payments under the estoppel exception by ordering a payment plan pursuant to the parties' agreement.

¶33     We need not address the issue that the court amended the parties' agreement by increasing Mike's payment towards child support arrearages to $100 per month because Mike does not dispute the court's decision.

¶34     We affirm the court's order setting up a payment plan for Mike for past due child support in the amount of $100 per month. Thus, Mike's property is not subject to execution for past due child support as long as he follows the court order.

¶35     The District Court did, however, err in ordering a deferred payment plan for past due medical support. There is no evidence of an agreement between the parties to which estoppel could apply. On the contrary, the court specifically acknowledged that it's payment plan for

12

past due medical support was not due to the parties' agreement, but to Mike's request during the proceedings. The court stated: "In addition to the $50.00 arrearage payment each month [as set by the CSED], the respondent has paid an extra $38.00. The respondent has asked the Court to apply that to medical expenses, and it is reasonable to do so." Nowhere does Mike assert he and Terri agreed part of his payment would be credited to past due medical support. Further, Terri asserts Mike refused to pay the medical bills she did give him. As there was no agreement and performance thereof which would estop Terri from asserting her right to immediate payment, the court erred in setting up a payment plan for the medical support arrearages. We reverse the court's order setting up a payment plan for Mike for past due medical support in the amount of $100 per month. We remand to the District Court to issue a judgment for the amount of past due medical support.

¶36 Finally, as to Terri's assertion that Mike did not pay any amounts toward either the child support or medical support arrearages between the court's November 2002 hearing and its February 2003 findings of fact, Mike does not contest her representations. Therefore, we remand to the District Court so that it may adjust its judgment based on paid past due child support and past due medical support to properly account for Mike's actual payments.

ISSUE TWO

¶37 **Did the District Court err in declining to hold Mike in contempt of its past orders?**

¶38 The District Court held that Mike was not in contempt because Terri did not meet her burden to establish that Mike had the ability to pay more. At the same time, the court held it was valid for Terri to bring the motion for contempt because Mike was "less than

13

forthcoming" about his finances. Further, the court found that Mike had the ability to pay more than he was paying because the court increased Mike's monthly payments to an amount Mike indicated he could pay. Regarding child support, the court held Mike was not in contempt of its earlier orders because he had been paying child support since the parties' agreement in July 1998. The court also declined to hold Mike in contempt on the past due medical support because Terri failed to regularly supply Mike with copies of the bills. Finally, the court held that contempt was not a proper method for Terri to collect on the property settlement that survived the bankruptcy proceeding.

¶39     Terri argues the District Court erred in failing to hold Mike in contempt because the court's conclusion that she failed to meet her burden to show Mike's increased ability to pay is inconsistent with the court's conclusion that Mike could pay a greater amount each month. Further, Terri asserts the court ignored clear and convincing evidence that demonstrated Mike's ability to pay. For example, Terri argues that because Mike is self employed as a specialized contractor and because he holds a United States patent on a heated valley for metal roofs, Mike is able to earn greater income. She asserts that because he did not provide her the necessary information to prove his income, Mike should not be allowed to benefit from this wrong. Terri points out that she was forced to look at the only information Mike provided, his general ledgers and tax returns, in order to show spending patterns that proved he conducted his business in cash and that he was able to pay more. Terri argues the evidence shows Mike spends far in excess of what he claims to earn as income and that his inconsistent testimony at the various hearings showed he lacked credibility regarding his

income. Finally, as to the medical support payments, Terri asserts she stopped giving Mike bills after years of his refusal to pay. She also asserts Mike's position that he could not afford to pay lump sums when she submitted bills to him at the end of the year was disingenuous because his records show large year end payments for non-necessary items like raffle tickets.

¶40    Mike asserts the District Court properly decided not to hold him in contempt because Terri failed to show he was not in compliance with the court's orders and failed to demonstrate he had an ability to pay more than he was paying.

¶41    We agree with the District Court. The disobedience of any process of court can constitute contempt. Section 3-1-501(1)(e), MCA. Where there is compliance with the court's previous orders, a party will not be found in contempt. *Heath v. Heath* (1995), 272 Mont. 522, 901 P.2d 590. Because contempt is intended as a discretionary power necessary to enforce the dignity and authority of the court, we review the findings and decision in a family law matter not to hold a party in contempt for a blatant abuse of discretion. *In re Marriage of Baer*, 1998 MT 29, ¶ 45, 287 Mont. 322, ¶ 45, 954 P.2d 1125, ¶ 45.

¶42    In this case, the crux of the contempt issue is not Mike's ability to pay, but rather whether he complied with previous court orders. As discussed above, Mike was essentially in compliance with the court's previous orders on child support because, pursuant to the parties' agreement, he paid an amount greater than required in the CSED payment plan. This payment plan was the last proceeding filed in the court on the issue of child support before Terri's most recent motion for contempt.

¶43 As to the court's previous orders regarding medical support, the District Court's decision not to hold Mike in contempt was not a blatant abuse of discretion because of the undisputed fact that Terri did not continue to give Mike copies of all the medical bills. As to the property settlement preserved by the bankruptcy court, Terri has had the power to execute on that judgment since it was issued. Therefore, the District Court's decision not to hold Mike in contempt for failure to pay this amount was also not a blatant abuse of discretion. While Terri was free to bring a contempt motion regarding the judgment, her actions do not bind the District Court's decision on whether to hold Mike in contempt. We affirm the District Court's decision not to hold Mike in contempt.

## ISSUE THREE

¶44 **Did the District Court err in ordering Mike was not required to pay interest on the past due child support?**

¶45 The District Court stated: "This Court is aware because of prior cases involving CSED agreements, that interest on the [child support] arrearage is waived as long as payments are made."

¶46 Terri asserts the District Court erred because interest must be paid pursuant to § 25-9-205, MCA, and *Williams*, 186 Mont. at 79, 606 P.2d at 519. She argues that even if interest was waived after the CSED plan was in effect, Mike still owes interest on the amounts not paid previous to June 1998.

¶47 Mike asserts the District Court properly waived interest because he is entitled to the same treatment as other payors under a CSED payment plan on equitable grounds.

¶48 On this point, we hold the District Court erred in not ordering that interest be paid on

the past due child support. In *Williams*, 186 Mont. at 78-80, 606 P.2d at 519-20, we held that when the marital dissolution decree is silent as to interest, such interest is automatically collectible by the judgment creditor spouse on past due payments for support or maintenance, the same as any other money judgment. We also held that denying interest on the past due support also amounted to a retroactive modification in violation of § 40-4-208, MCA. The question of whether the estoppel exception discussed above could also apply to accruing interest if the elements of estoppel were met by an agreement and the conduct of the parties is not presented by the situation here.

¶49 In this case, the District Court's decision to deny interest was based on its understanding of CSED policies. However, the record does not support the District Court's understanding because nothing in the CSED payment plan prevents interest from accruing on past due amounts as part of the license suspension action. Mike cites no administrative rule from CSED or text from his payment plan agreement in support of the District Court's decision. Therefore, the District Court erred when it failed to order that interest at the legal rate of 10% per annum be paid on the past due child support amount pursuant to § 25-9-205, MCA.

## ISSUE FOUR

¶50 **Did the District Court err in exempting one of Mike's business accounts from execution by Terri?**

¶51 In order to prevent another situation in which the court would be asked to return an executed amount by one of Mike's customers, the District Court stated:

> [Mike], to ensure that he can conduct his business and make sufficient monies to pay his obligations, shall be able to designate one business account that

17

shall be free from execution. [Mike] shall provide the Court with a report concerning all activity within that account every four (4) months . . . [until all amounts are paid].

Because the court did not allow execution for the past due child support and past due medical support by virtue of its deferred payment plans, the court specifically applied the exemption for Mike's business account to be free from execution for the property settlement that survived the bankruptcy.

¶52 Terri asserts the court was without authority to exempt an account from execution. She cites *State v. Dawson* (1984), 207 Mont. 417, 674 P.2d 1091, in support of her argument that such a restriction also constitutes retroactive modification of a divorce decree in violation of § 40-4-208, MCA. She also asserts the court's actions violated the proceedings for execution codified at Title 25, Chapter 13.

¶53 Mike asserts that the exemptions for personal income provided for in Title 25, Chapter 13, do not apply to his situation because the exempt account is for business expenses that are not personal income to him. Mike argues the District Court had equitable power to address the situation between the parties and set up such an exempt account.

¶54 We hold that the District Court did not have the authority to order a bank account exempt from execution. While the evidence introduced regarding the situation between the parties warrants constant monitoring by the District Court, the authority to exempt an account from execution is not provided for by our statutory scheme. Title 25, Chapter 13, Part 6, provides for general exemptions from execution.[1] The relevant sections include §

---

[1] There are other specific exemptions in other parts of the code, see Title 25, Chapter 13, Part 6, Cross References. However, those exemptions are not at issue here.

18

25-13-609(3), MCA, and § 25-13-614, MCA. Section 25-13-609(3), MCA, provides that up to $3,000 worth of the implements, professional books, and tools of the debtor's trade are exempt from execution. In contrast § 25-13-614, MCA, exempts a percentage of the judgment debtor's disposable earnings from garnishment. The garnishment limits are not defined so as to account for disposable income in a self employment situation, unlike in an analogous Chapter 13 bankruptcy proceeding.[2]

¶55 The account Mike uses for his business does not fit under either of these two statutes. The funds that pass through his account to cover general business expenses are neither tools of his trade or a percentage of his disposable earnings. Consequently, this type of account is neither addressed nor exempted from execution by Title 25. Therefore, the District Court's exemption improperly restricts Terri's ability to levy execution and is also a retroactive modification of the property settlement in violation of § 40-4-208, MCA. We must disagree with Mike that the District Court had equitable authority to exempt an entire bank account from execution as its order conflicts with the plain language of our execution statutes. We reverse the court's order exempting one of Mike's bank accounts from execution.

ISSUE FIVE

¶56 **Did the District Court err when it denied Terri's request for attorney fees**

_____

[2] Montana has no equivalent to 11 U.S.C. § 1325(b)(2)(B). This section provides: "For purposes of [setting up a plan to discharge bankruptcy] 'disposable income' means income which is received by the debtor and which is not reasonably necessary to be expended . . . if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business." In *MacDonald v. Mercill* (1986), 220 Mont. 146, 714 P.2d 132, we noted that by enacting § 31-2-106, MCA, Montana uses the same exemptions for execution as for bankruptcy and that Montana does not follow the federal list of bankruptcy exemptions.

**and costs pursuant to their original settlement agreement?**

¶57 The District Court determined neither party was entitled to attorney fees because Terri did not prove Mike had an increased ability to pay and because Mike was less than forthcoming about his finances.

¶58 Terri asserts the District Court erred because it is undisputed Mike breached the settlement agreement incorporated into the divorce decree. She also argues she was the prevailing party because the court ordered Mike to pay past due child support and past due medical support. Terri cites the settlement agreement provision between the parties which reads: "Should any action be commenced to enforce the provisions of this agreement, the prevailing party shall be entitled to a reasonable attorney's fee and costs." Mike asserts that neither party prevailed so neither party is entitled to attorney fees.

¶59 We agree with the result reached by the District Court. In *In re Marriage of Pfennigs*, 1999 MT 250, ¶ 42, 296 Mont. 242, ¶ 42, 989 P.2d 327, ¶ 42, we held that a contractual provision awarding attorney fees to the prevailing party in a divorce action was not effective when each party prevailed on different issues. The same is true in this case in that Terri failed to prevail on her contempt motion and Mike failed to prevail on his motion to dismiss. Therefore, the District Court acted within its discretion when it denied fees to both parties.

ISSUE SIX

¶60 **Is Terri entitled to attorney fees and costs on appeal?**

¶61 Terri also requests fees and costs on appeal pursuant to the settlement agreement provision. Again, because she only prevails on some of the above issues, she is not entitled to costs and fees on appeal. Each party shall pay their own costs and fees on appeal.

¶62    Finally, Terri requests this Court set a date certain when Mike's monthly child support payments will be due.  The District Court can address this issue on remand if an appropriate petition is filed.

### III. CONCLUSION

¶63    Because the District Court properly ordered a deferred payment plan for past due child support based on the parties' agreement, we affirm.  We also affirm the court's decision not to hold Mike in contempt.  We reverse the court's order setting up a deferred payment plan for past due medical support and stopping interest from accruing on the past due child support.  We reverse the court's order exempting one of Mike's bank accounts from execution.  We affirm the court's decision not to award either party attorney fees.  Thus, we affirm in part, reverse in part, and remand for proceedings consistent with this Opinion.


                                                    /S/ JOHN WARNER

We Concur:

/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JIM RICE

Chief Justice Karla M. Gray, concurring in part and dissenting in part.

¶64    I join in the Court's opinion on all issues except Issue 1.  I dissent from the opinion, analysis and result on the portion of Issue 1 which relates to whether the District Court violated § 40-4-208, MCA, when it ordered a deferred payment plan for past due child support.  The bases for my dissent in this case are along the same lines as those set forth

21

generally in my recent concurring and dissenting opinion in *In re Marriage of Mease*, 2004 MT 59, ¶¶ 67-74, 320 Mont. 229,¶¶ 67-74, ___ P.3d ___, ¶¶ 67-74 (Gray, C.J., concurring and dissenting).  My concerns there centered on the Court's *sua sponte* insertion of a rationale not advanced in the trial court or on appeal by the party in whose favor the Court acted, and how often and on what basis the Court intended to do so.  I will not repeat my concerns here at length since they are readily available in another marital case opinion less than two weeks old.  *See Mease*, ¶¶ 67-74 (Gray, C.J., concurring and dissenting).

¶65    It is true that here, the Court "merely" permits Mike to raise and prevail on the estoppel theory for the first time on appeal whereas, in *Mease*, the Court *sua sponte* inserted a statute argued by neither party in the district court or on appeal.  But while the Court's act here is not precisely the same, its willingness to decide a case on the basis of a theory never presented to the District Court is no less troubling.  This is particularly true when one of our most basic operating principles is that we do not consider new issues or changes in theory on appeal.  *See Dayberry v. City of East Helena*, 2003 MT 321, ¶ 24, 318 Mont. 301, ¶ 24, ___ P.3d ___, ¶ 24; *In re Marriage of Oehlke*, 2002 MT 79, ¶ 30, 309 Mont. 254, ¶ 30, 46 P.3d 49, ¶ 30; *Renner v. Nemitz*, 2001 MT 202, ¶ 15, 306 Mont. 292, ¶ 15, 33 P.3d 255, ¶ 15; *Pearson v. Virginia City Ranches Ass'n*, 2000 MT 12, ¶ 57, 298 Mont. 52, ¶ 57, 993 P.2d 688, ¶ 57; *Unified Industries, Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15; *Clover Leaf Dairy v. State* (1997), 285 Mont. 380, 387, 948 P.2d 1164, 1168; *Sherrodd, Inc. v. Morrison-Knudsen Co.* (1991), 249 Mont. 282, 285, 815 P.2d 1135, 1137; *Weaver v. Law Firm of Graybill, Ostrem, Warner & Crotty* (1990), 246 Mont. 175, 180, 803

22

P.2d 1089, 1092-93; *Chamberlain v. Evans* (1979), 180 Mont. 511, 517, 591 P.2d 237, 240; *Bower v. Tebbs* (1957), 132 Mont. 146, 160, 314 P.2d 731, 739.

¶66     The Court begins its discussion of the estoppel theory regarding child support payments at ¶ 27. Its general statements of the principles underlying that theory are correct. Its decision, in ¶ 28, to assess the District Court's actions "in light of these rules" is not.

¶67     The Court, Mike and I all agree that the District Court did not expressly apply estoppel. The reason, of course, is that Mike did not present it. Our case law on estoppel in these situations is clear. Indeed, we stated without equivocation in *In re Marriage of Cook* (1986), 223 Mont. 293, 300, 725 P.2d 562, 566, that "[o]nly in cases where equitable estoppel is found *by the trial court* upon clear and compelling evidence may [equitable estoppel] override the provisions of § 40-4-208, MCA." (Emphasis added.) The trial court did not make an estoppel finding in this case, much less a finding based on clear and compelling evidence. Thus, the Court's statement in ¶ 29 that the long established estoppel exception to § 40-4-208, MCA, applies here is simply incorrect, in addition to the fact that the doctrine is being raised for the first time on appeal. Neither *Hooper* nor *Shorten*--relied on by the Court for the principles of estoppel--supports action by this Court in applying equitable estoppel for the first time on appeal.

¶68     The Court also does not take into account the fact that estoppel is an affirmative defense which must be pled pursuant to Rule 8(c), M.R.Civ.P. Mike did not plead it in his answer or even raise it in his posttrial proposed findings of fact, conclusions of law and order. The Court, however, content with its view that evidence of record would have

supported the estoppel theory, merrily applies estoppel to Mike's advantage and Terri's clear disadvantage. I cannot agree.

¶69     Perhaps our long-standing and oft-repeated principle that we do not permit a party to raise new issues or change its theories on appeal is verging on extinction, along with our usual willingness to restrain ourselves from injecting new matters not presented by either party. *See Mease*, ¶¶ 67-74 (Gray, C.J., concurring and dissenting). Such matters concern me greatly.

¶70     We have often been subjected to criticism by lawyers who should know better that our decisions in marital dissolution actions are "all over the map" and totally lacking in consistency. I have, over the years, attempted to explain to such lawyers that the reasons our opinions in this area *appear* to be in disarray are that (1) the cases are extraordinarily fact specific and, with regard to a trial court's findings, it takes very little to sustain them; and (2) trial courts have inordinately broad discretion in many aspects of dissolution cases and abuses of that discretion seldom are established. In other words, based on very specific facts--supported by the record--the court exercises its broad discretion. Affirming a trial court's exercise of discretion based on very specific facts in one case does not require a reversal of a different trial court's exercise of its broad discretion in a different--but somewhat similar--case.

¶71     By the Court's actions here and in *Mease*, however, our marital cases do seem to be heading toward total disarray. How will parties ever know whether their case will be subjected to the usual rules or be changed significantly on appeal by this Court? Why would trial judges have any interest in continuing to do their work carefully and with dedication,

24

knowing that this Court will remake the cases however it sees fit? How can we possibly meet our obligation to provide guidance for future cases to lawyers and trial courts when we act so irresponsibly?

¶72 It is my view that, absent the Court's consideration of the estoppel theory raised by Mike for the first time on appeal, Terri would prevail in the child support portion of Issue 1. In *Mease*, Robert would have prevailed on Issue 4 had the Court confined itself to the issues presented by the parties. Clearly, the Court has no bias in favor of or against wives or husbands. But equally clearly, the Court seems to have little concern for the due process rights of the party it chooses not to "assist" in prevailing on appeal.

¶73 I dissent.

/S/ KARLA M. GRAY